# CHARLESTON.

SOUTH PENN OIL CO. *v.* McIntire *et al.*

Submitted September 13, 1897—Decided January 26, 1898.

1. INSANE PERSONS—*Committee—Appointment of Committee.*
   The appointment of a committee of an insane person by the county court or its clerk, without the notice required by statute, is void. (p. 305).

2. INSANE PERSONS—*Committee—Sale of Realty—Parties.*
   In a proceeding by a committee of an insane person, under chapter 83, Code, to sell the undivided interest of such insane person in the oil and gas underlying a tract of land, the co-tenants of such person are not necessary or proper parties to such proceeding. (p. 306).

3. INSANE PERSONS—*Committee—Sale of Realty—Lease.*
   Oil and gas being a part of the realty in and under which they exist, the committee of an insane person having an interest therein can only sell or lease such interest by decree of court as provided by statute. (p. 306).

Appeal from Circuit Court, Tyler County.

Bill by the South Penn Oil Company against A. B. McIntire, committee, and others, for an injunction to restrain defendants from interfering with plaintiff's possession and use of certain land. From a judgment sustaining defendant's demurrer to the bill, plaintiff appeals.

*Affirmed.*

A. B. FLEMING and U. N. ARNETT, JR., for appellant.

COX & BAKER, for appellees.

McWhorter, Judge:

On the 29th of April 1895, A. B. McIntyre was by the clerk of the county court of Tyler county, without the notice required by law first served, appointed committee of Lucretia J. Thompson, a lunatic. On the 1st day of May, 1895, said committee, together with Elihue Thompson and Erufus G. Thompson (the said three Thompsons being the sole heirs at law of Mary A. Thompson, deceased), leased to the South Penn Oil Company ninety and one-half acres of land in Tyler county for oil and gas purposes; and the lessee was to pay a royalty of one-eighth of the oil produced in the pipe line, and two hundred dollars per annum for each gas well from which the product should be marketed; said lease to run five years, and as much longer as gas and oil were found in paying quantities; and time specified in which work should be begun, and in which wells should be completed; and certain stipulated cash rent to be paid quarterly until such wells were completed. Under the lease the lessee took possession, and kept the rent paid up. Said lease was duly recorded in the clerk's office of the county court of Tyler county. On the 21st day of November, 1896, after notice served on the said lunatic, on the 13th day of November, of the application, the said A. B. McIntyre was appointed her committee by the clerk of said court, and gave bond and qualified as such committee. December 14th, 1896, said committee filed his bill against Lucretia J. Thompson, Elihue Thompson, and Erufus G. Thompson, alleging that his appointment as committee on April 29, 1895, reported to the court by the clerk, and confirmed July 9, 1895, being without the notice required, was void, and setting up his second appointment as valid; that Mary A. Thompson died about —— day of ——, 1893, seised of ninety and one-half acres of land lying on the left-hand fork of Indian creek, McElroy district, Tyler county; that the heirs, said two brothers, Elihue and Erufus, for themselves and plaintiff, had agreed upon a partition of said land, and engaged the services of J. C. Warner, surveyor of lands of Tyler county, who made survey, and partitioned said land between themselves, but excepted from said partition the oil and gas supposed to

lie in and under said land; alleging that the best interests of his ward would be subserved by the sale for cash of seven-eighths of her one-third undivided interest in the gas and oil underlying said tract of land, reserving from such sale the one-eighth of one-third, the usual royalty in the product; praying that a guardian *ad litem* be assigned to the said lunatic, to make answer and protect her interest in the suit, and for a decree to sell said seven-eighths of one-third undivided interest in said oil and gas (said sale to be either at public or private sale, to the highest bidder for cash), together with the privilege to the purchaser to enter upon said land, and drill, bore, excavate, and operate for oil and gas within and underlying the same; to lay pipe lines for the transportation of oil, gas and water; to build tanks, stations, structures, and other buildings on said land; to take care of said oil and gas; to use sufficient water from said land to run all necessary machinery, engines, boilers, fixtures, tanks, structures, stations, offices, and buildings placed on said land by said purchaser and any one holding under him,—and that the usual one-eighth of the production or royalty oil might be reserved to his ward, and, if oil should be produced from said land, her royalty be set apart to plaintiff, her committee, in the pipe line, in the usual and customary way, and for general relief.

C. R. Martin was appointed guardian *ad litem* and answered for defendant Lucretia J. Thompson. The other defendants, Elihue Thompson and Erufus G. Thompson, answered the bill, accepting the partition, and joining in the prayer of the plaintiff for the sale of the seven-eighths of their sister's interest in said oil and gas. Depositions were taken and filed, sustaining the allegations of the bill. On the 16th of December, 1896, a decree was entered confirming the partition of the surface, and directing the sale of the said interest in the oil and gas, and appointing said McIntyre, committee, a special commissioner for the purpose of making the sale. On the same day the commissioner reported that he had sold the said interest to D. H. Courtney, A. L. Lowrie, and Joseph McDermott, for one thousand and one hundred dollars cash; said purchasers paying all the costs, including attorney's fees, in said pro-

ceeding, as provided by the decree authorizing the sale. On the —— day of December, 1896, the court entered a decree confirming said sale, and directing a deed to be made to the purchasers.  On the 17th day of December, 1896, A. B. McIntyre, committee for Lucretia J. Thompson, and special commissioner appointed for the purpose, conveyed to said purchasers, in pursuance of said decree, all of the undivided one-third interest of said Lucretia J. Thompson in and to the undivided seven-eighths of all the oil, and in and to all the gas, underlying that certain tract and parcel of land of ninety and one-half acres aforesaid, "with the right and privilege to the said purchasers of entering upon the said tract of land, and drilling, mining, boring and operating for oil and gas, and operating and producing the oil and gas within and underlying the same, and of laying pipe lines, either on top of or underneath the surface of said land, for the transportation of oil, gas, and water, and of erecting and building tanks, stations, and structures on said land to take care of the said oil and gas, and of using sufficient water from the said land to run all necessary machinery, and of using gas from any well drilled thereon, producing gas, to run all necessary machinery, and to drill and pump any and all other wells thereon, and the right and privilege at any time of removing all and any machinery, fixtures, engines, boilers, tanks, stations, structures, offices, and buildings placed on the said land by said purchasers or any one holding under or through them; all of which said rights and privileges shall be exercised by the said purchasers of the said oil and gas interests.  To have and to hold as hereinafter provided."  In and by said decrees in said cause aforesaid, directing said sale and deed as aforesaid, it is provided and decreed :  "That, as a part of the terms and conditions of the said sale, the said purchaser thereof shall be required to do and perform, and shall do and perform, the following, to wit :  To drill and complete two wells for oil and gas on the said tract of land within three months from the date of the confirmation of any sale made hereunder, unavoidable delay in drilling excepted, and from time to time drill and complete other wells thereon so as to fully develop said land, free of cost to said Lucretia J. Thompson or her said committee ; to

locate all wells so as to interfere as little as possible with the surface of said land for farming purposes, and so as to protect the lines of said land, and prevent the oil from being drained from under the same by wells on adjoining tracts; to deliver as royalty to the credit of the said Lucretia J. Thompson or her committee, in tank or pipe lines, free of cost to her or her said committee, her proportionate share, to wit, the one-third of the one-eighth."

At the January rules, 1897, the South Penn Oil Company filed its bill in the circuit court of Tyler county against A. B. McIntyre, committee, Elihue Thompson, Erufus G. Thompson, Amanda Thompson (wife of Erufus Thompson), Lucretia J. Thompson, D. H. Courtney, A. L. Lowrie, Joseph McDermott, and John Garard, attacking the proceedings in the case of A. B. McIntyre against Lucretia J. Thompson and others, in which the interest of the lunatic, Lucretia, in said oil, was conveyed to Courtney, Lowrie, and McDermott; setting up their lease of the 1st day of May, 1895, made by said McDermott, as committee, under his first appointment, of April 29, 1895, wherein they were authorized to take said oil and gas from said ninety and one-half acres of land, said lease being executed by Elihue Thompson, Erufus G. Thompson, and said committee; that lessee had paid for said lease a cash bonus of one dollar per acre, aggregating ninety dollars, and had paid quarterly rent of thirty-four dollars to the lessors, and had thereby kept the lease alive, and from being forfeited; that it had taken possession of the land for the purpose of drilling and laying pipe lines thereon, and had not as yet completed a well; that plaintiff had learned within the past few days that said McIntyre, committee, had filed his petition for the purpose of selling the interest of Lucretia in the oil and gas in said land, and had, under the decree of this court, sold said interest, for the price of one thousand one hundred dollars, to Courtney, Lowrie, and McDermott, and that sale had been confirmed, and deed made for the same; alleging that all of the parties interested, including the purchasers and their agent, John Garard, not only had constructive notice of plaintiff's lease, from the recording thereof, but had actual notice of the fact that said lease had been executed, and that plaintiff

had purchased and paid for said oil and gas, and was the owner thereof, and that the lease had not become forfeited, but still in force and effect; that said McIntyre in said proceeding intentionally omitted to make plaintiff a party to said proceedings in which the gas .and oil of Lucretia were sold, for the purpose of cheating, defrauding, and wronging plaintiff in the premises; that the matter was hastily pushed through the court, and private sale made to said Courtney, Lowrie, and McDermott, through their agent, Garard, in fraud of plaintiff's rights, and hurried through for the purpose of preventing plaintiff from protecting its interest in the matter, and that plaintiff was not made a party to the proceedings for fear that plaintiff would interfere for the protection of its rights in the premises, and preventing the plaintiff from making defense in said proceeding, for the purpose, not only of wronging the plaintiff, but of cheating and wronging said insane defendant; that the plaintiff was informed and believed that said McIntyre, committee, and said Garard, agent of said purchasers, conspired and colluded together in the sale and purchase of said interest for the purpose of cheating and defrauding the plaintiff and said insane person ; that, if said interest of Lucretia Thompson in said gas and oil had been offered for sale at public auction by the committee, it would have sold for a much larger sum than one thousand one hundred dollars; that plaintiff was informed and believed, and charged, that said McIntyre, as committee, and said Courtney, Lowrie, and McDermott, by and through their agent, John Garard, shortly before committee filed his bill or petition to sell said Lucretia J. Thompson's interest in said oil and gas, fraudulently entered into a secret agreement, by which the said McIntyre was to institute suit, get a decree directing him to sell the interest of Lucretia in the undivided seven-eighths of the oil and gas, so as to sell the same at private sale, and that said Courtney, Lowrie, and McDermott were to be permitted to purchase the same at private sale at their own terms, and without giving any other person an opportunity to bid on or buy the same, and further fraudulently and secretly agreed to and with each other that the plaintiff, notwithstanding it was a party materially interested in the

oil and gas sought to be sold, should not be made a party to said suit, but should be omitted therefrom, and thereby be deprived of any knowledge or notice of their said intention and purpose, and did, in pursuance of said fraudulent and secret understanding and agreement, carry out the same by said proceedings, and in said proceedings did illegally and wrongfully procure the entering of a decree partitioning said tract of ninety and one-half acres of land between the said Lucretia, Elihue, and ·Erufus, except as to the oil and gas within and underlying said tract of land, which the committee had no lawful right to make or do, and that the decrees entered therein, making such partition, or attempting to make or confirm said ·partition, are illegal and void, and constitute a cloud upon plaintiff's title to said oil and gas interest therein; and praying an injunction restraining the defendants, and each of them, from in any way interfering with plaintiff in its possession of all the tract of ninety and one-half acres described in its lease of May 1, 1895, and from taking possession of said tract, or any part thereof, for the purpose of drilling for oil or for gas, or for any other purpose, laying pipe lines thereon, or doing any other act thereon, under the deed made by McIntyre, committee, to Courtney, Lowrie, and Mc-Dermott, and from interfering in any way with or preventing plaintiff from drilling on said land for oil and gas, under said lease, until the further order of the court, and that the injunction be made perpetual; that O. W. O. Hardman be appointed guardian *ad litem* for said insane person, and answer the bill under oath, and that said deed made to the purchasers by the committee, under which the oil and gas was sold, be set aside as fraudulent, illegal, and void, and the cloud of the same be removed from the plaintiff's title to the said oil and gas interest and rights and privileges acquired by it under said lease; and that plaintiff's said lease, so far as it relates to the interest of said insane person, be approved and confirmed; and for general relief.

On the 16th of January, 1897, the defendants Courtney, Lowrie, McDermott, Garard, and McIntyre, committee, filed their notice to the plaintiff, properly served, showing that on that day they would make application, by motion, to the court, to dissolve the injunction awarded on the 23d

day of December, 1896, on the bill filed in this case, which notice of motion was docketed over the objection of the plaintiff. The defendant McIntyre, committee, tendered his answer, and asked leave to file the same; and Courtney, Lowrie, McDermott, and Garard tendered their several answers, and asked leave to file, which answers were duly sworn to, and to the filing of which for any purposes connected with said motion to dissolve said injunction, or for the purpose of controverting any of the allegations in plaintiff's bill, or for the purpose of reading said answers upon the hearing of said motion, the plaintiff objected, which objection was overruled, and the answers permitted to be filed. Defendants, also, in support of their answers to dissolve, tendered the affidavits of M. Keating, Clel. Nichols, J. C. McMahan, and John O'Hara, to the reading of which plaintiff objected, and the objection was sustained. Said answers were read as evidence on motion to dissolve, and the court, having heard the argument of counsel, and considered the said motion, was of the opinion to, and did, dissolve the said injunction, but retained the bill for further proceedings. The guardian *ad litem*, O. W. O. Hardman, was present in court during the hearing of said motion, and the decree was suspended thirty days to enable the defendants to present a petition for an appeal to the supreme court.

At the January rules, 1897, the defendants D. H. Courtney, A. L. Lowrie, and Josegh McDermott filed their demurrer to the plaintiff's bill, "and for cause of demurrer say that the said bill, if the same were true, which the defendants in no wise admit, contains not any matter of equity whereon this court can grant any decree, or give the complainant any relief or assistance as against these defendants." Said A. B. McIntyre also filed his demurrer, and for grounds of demurrer says: "(1) For want of equity jurisdiction. (2) Because the bill shows on its face that the pretended title or lease set up by plaintiff, and under which it claims to hold the oil and gas interest of said insane person in said 90½ acres of land, was made without right or authority in law or equity so to do, and is absolutely null and void. (3) For want of proper and sufficient averments. (4) Because the same is multifarious.

(5) Because, as an injunction bill, it is not supported by affidavit in manner and form as required by law; the supposed affidavit thereto being insufficient, and the jurat fatally defective. (6) For other and apparant errors and insufficiencies on the face of said bill."

On the 22d of April, 1894, the cause came on to be heard upon the bill and exhibits; the demurrer of defendants to complainant's bill; joint and separate answers and exhibits of defendants Courtney, Lowrie, McDermott, and Garard; the general and special replication thereto; also, the separate answer of A. B. McIntyre, committee of Lucretia Thompson, an insane person, general replication thereto, and the bill taken confessed as to Elihue Thompson, Erufus Thompson, Amanda Thompson, wife of Erufus G. Thompson,—and was argued by counsel. And the court being of opinion that the plaintiff was not entitled to the relief prayed for in said bill, or any relief which can properly be granted in the cause, the demurrer to the bill was sustained; and, the plaintiff not desiring to amend its bill, the bill was dismissed. From this decree the plaintiff has appealed to this Court.

The gravamen of the complaint is that proceedings were taken by the committee of Lucretia J. Thompson to sell her interest in the oil and gas in contravention of plaintiff's rights in the oil and gas sought to be sold, acquired by virtue of its lease made by said committee May 1, 1895; and all the charges of fraud, fraudulent intent, collusion, and combination between the committee, the purchasers, and others, for the purpose of defrauding plaintiff, and in furtherance thereof, failing to make plaintiff a party to said proceedings for fear of its making its defense, contained in the bill, have reference to the proceedings for the sale of the insane defendant's interest in the oil and gas, while the matter of the partition seems to have had no importance attached to it in the bill, simply alleging that the committee, "in the said proceeding instituted by him to sell the oil and gas interest of said Lucretia J. Thompson, illegally and wrongfully sought to procure, and did wrongfully and illegally procure, the entering of a decree therein partitioning said tract of 90½ acres of land between the said Lucretia J. Thompson, Elihue Thomp-

son, and Erufus G. Thompson, except as to the oil and gas within and underlying said tract of land, which plaintiff is advised and believes that plaintiff had no lawful right to make or do, and that the decree entered therein, making such partition, or attempting to make and confirm such partition, is illegal and void, and consititutes a cloud on plaintiff's title to said oil and gas interest therein." And the only part of the prayer of the bill which can be construed in any manner to refer to said partition is included in the following : "That said deed made by said committee to said purchasers, and the decrees and proceedings in said cause, and the sale made therein, under which the oil and gas was sold to said purchasers, be set aside as fraudulent, illegal, and void, and the cloud of the same removed from the plaintiff's title to the said oil and gas interest and rights and privileges acquired by it under its said lease; that plaintiff's said lease, so far as it relates to the interest of the said insane person, be approved and confirmed by your honor's court; and that plaintiff also have such other and general relief as the court may see fit to grant." Did plaintiff take anything by virtue of the lease of May 1, 1895, made by the committee for and on behalf of Lucretia J. Thompson, insane ? First, the appointment of A. B. McIntyre as committee of Lucretia J. Thompson by the clerk of the county court of Tyler county on the 29th day of April, 1895, was void, and clothed the said McIntyre with no authority whatever as such committee. "A county court or its clerk cannot appoint a committe for a person, as insane, without notice to him. Such an appointment is void, and confers no authority." *Evans* v. *Johnson*, 39 W. Va., 299, (19 S. E. 623), Syl., point 1; *Lance* v. *McCoy*, 34 W. Va., 416, (12 S. E. 728), Syl., point 1; *Chase* v. *Hathaway*, 14 Mass. 222; *Hathaway* v. *Clark*, 5 Pick. 490. So that it appears his appointment was void. But admitting it to be valid, was he authorized to lease or sell the property, except in the manner prescribed by statute? In *Wilson* v. *Youst*, 43 W. Va., 826, (28 S. E. 781), Syl. points 1 and 2: "(1) Petroleum oil, as it is found in the crevices of the rock, is part of the realty, and embraced in the comprehensive idea which the law attaches to the word 'land.' (2) The

only manner in which a guardian can lease or sell the land of his ward for the purpose of its development, or any other purpose, is in the manner prescribed by statute, under a decree of the court." *Appeal of Stoughton*, 88 Pa. St. 198, Syl.: "A guardian has ordinarily power to lease any of his ward's property, of such character as makes it the subject of a lease; but, without the approval of the orphans' court, he cannot dispose of any part of the realty. Oil is a mineral, and, being a mineral, is part of the realty; and a guardian cannot lease the land of his ward for the purpose of its development, as it would, in effect, be the grant of a part of the corpus of the estate of his ward." Also, *Bates* v. *Dunham*, 58 Iowa, 308, (12 N. W. 309), Syl.: "Guardians have authority to lease the lands, loan the money, and manage the interests of their wards, under the direction of the court; but the direction must precede the act, and without such direction the guardian would have no authority to do such acts, and would be answerable therefor."

It is claimed by plaintiff that it should have been made a party to the proceedings for the sale of the interest of Lucretia J. Thompson in the oil and gas. In *Curry* v. *Hale*, 15 W. Va., 867, Syl. pt. 6: "The undivided interest of a tenant in common may be levied upon and sold under an attachment." Point 7: "The co-tenants of the debtor are not proper parties to a suit for such purpose." JUDGE JOHNSON, in rendering the decision in that case, says: "It was not only unnecessary to have the parties holding the remaining interests before the court, but they would have been improper parties, as no decree could have been made affecting their interests. The interests of the appellants are undivided, and as such liable to be sold for their debts, and the purchaser at the sale would take their interest as tenants in common with the original grantors in the deed." Freem. Co-Ten. § 213. So it appears that, so far as the sale of the interest of the insane defendant in the oil and gas is concerned, the plaintiff was not only not a necessary party, but it would have been improper to have made it a party; but, as to the proceeding for partition, "if it is proposed by the partition to affect the rights of lessees, they must be made parties defendant, or in some other manner

brought before the court." *Id.* § 480. In *Thurston* v. *Minke,* 32 Md. 575, the court say: "The omission to make the tenants in possession parties to the proceeding forms no ground against the decree of sale: They are in no sense proper parties. It is shown that they are holding only from year to year, and their rights as renters can in no manner be affected by the decree of sale. The purchaser will take the estate subject to the existing rights of the tenants, and, of course, will be entitled, as assignee of the reversion, on the final ratification of the sale, to the rents falling due from the time of the sale made. *Wagner* v. *Cohen,* 6 Gill, 97. In cases of partition, if one tenant in common has demised his individual share in the estate for a long term, it is necessary that the tenant should be made a party to the bill, in order that he may be required to join the lessor in the deed of severance." The decree of the circuit court in sustaining the demurrer and dismissing the plaintiff's bill is affirmed, but without prejudice to the appellant to take only such proceedings hereafter as it may be advised to take, to set aside the partition among the heirs of the surface of the ninety and one-half acres.

*Affirmed.*