[No. 2056.]

JONES, CONSERVATOR OF ESTATE OF LEARNED, v. LEARNED.

1. **Lunatics—Conservators—Judgments—Notice.**

A judgment adjudging a person a lunatic and appointing a conservator of his estate, rendered without notice to the lunatic, is a nullity.

2. **Lunatics—Conservators—Judgments—Juries.**

A judgment declaring a person a lunatic and appointing a conservator of his estate, without the verdict of a jury finding such person so insane or distracted as to render him incapable or unfit to care for or manage his estate, is without authority and void.

*Error to the District Court of Arapahoe County.*

Mr. H. P. BENNET, Jr., for plaintiff in error.

Mr. R. H. GILMORE, for defendant in error.

GUNTER, J.

May, 1883, James H. Learned was adjudged insane by the county court of said county and a conservator appointed of his person and estate. February, 1886, the same court held him sane, discharging the conservator. Shortly thereafter he removed to New York state, taking up residence there. By a court of that state he was adjudged insane June, 1886, one Snow being appointed as committee of his person and estate; Snow continued to act as such until November, 1894, when his committeeship was concluded and he discharged. The lunatic escaped from the New York asylum to Connecticut during

Snow's committeeship and has ever since been confined in an asylum in the latter state. February, 1897, by a Connecticut court one Chapin was appointed as, and still is, conservator of the person and estate of the lunatic. January, 1893, Mary A. Learned, wife of the lunatic, without notice to him and without a jury having found him insane, was appointed as his conservatrix by said Arapahoe county court. May, 1893, Mrs. Learned resigned her conservatrixship and plaintiff in error, Jones, was appointed as her successor by last mentioned court without notice to the lunatic and without notice to his then conservator Snow, and without the verdict of a jury declaring him insane. July, 1893, Mrs. Learned died, leaving this lunatic as her sole heir. May, 1897, the lunatic by his next friend, Charles H. Learned, his only brother, filed in the said Arapahoe county court his petition asking that the orders appointing Mrs. Learned and Jones as conservators be declared null and void, and that said Chapin be recognized as conservator. This petition denied by the county court was granted on appeal to the district court February, 1889, and a decree there entered holding the appointments of Mrs. Learned and Jones null and void and remanding the cause to the county court for further action. From this order is this proceeding in error by Jones.

1. This is a direct proceeding to vacate the appointments of Mrs. Learned and Jones. From the above statement it appears that Mrs. Learned was appointed conservatrix without notice to the lunatic and without the verdict of a jury finding him insane. On the resignation of Mrs. Learned, Jones was appointed conservator without notice to the lunatic. The effect of such orders was to deprive him of his liberty and of the possession and control of his property. Such result was without giving him an op-

portunity to be heard. The proceedings thus questioned were taken during 1893, and prior to June 1 thereof, and were under 2 Mills' Ann. Stats., sec. 2935. This section did not in terms require notice to be served upon the lunatic; the authorities, however, are as one that such notice is necessary irrespective of statute. The above section, also most of the act in regard to lunatics, was taken from Illinois; it was construed before borrowed in *Eddy v. The People,* 15 Ill. 386. Therein the party was adjudged a lunatic without notice, the statute at such time did not in terms require notice; the decree was vacated because of the absence of this notice, the court in ruling said: "We are clearly of the opinion that upon the general principles of law, the supposed lunatic is entitled to reasonable notice * * * every principle of justice and right requires that he should have notice and be allowed to manifest his sanity * * * . The idea is too monstrous to be tolerated for a moment, that the legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of a community, by any party who might be interested to shut him up in a mad-house, by which he might be divested of his property and his liberty, without an opportunity of a struggle on his part * * * .

To the same effect are *Chase v. Hathaway,* 14 Mass. 222; *Evans v. Johnson,* 39 W. V. 299, 19 S. E. 623; *Holman v. Holman,* 80 Me. 139; *McCurry v. Hooper,* 12 Ala. 823; *Allis v. Morton and another,* 4 Mass. 63.

2. The absence of a verdict of insanity was also fatal to the judgments. Our statute requires the finding of a jury that the person claimed to be disordered is so "insane or distracted as to render him or her incapable or unfit to care for or manage his or her estate." An inquisition of lunacy is regulated

by statute; the statute prescribes the verdict of insanity as a condition precedent to the court exercising the power to adjudge insanity and appoint a conservator. The authorities are agreed that the statute regulating inquisitions of lunacy must be strictly observed and that a failure to observe the requirement of a verdict of insanity is fatal to the proceeding. That the provisions of the statute must be strictly pursued, see *Behrensmeyer v. Kreitz,* 135 Ill. 591, 26 N. E. 704; *Partello v. Holton,* 44 N. W. 619, 75 Mich. 372; *North v. Washtenaw,* 26 N. W. 810.

That the absence of a verdict of insanity is fatal to the inquisition, *Eslava v. Lepreter,* 21 Ala. 504; 56 Am. Dec. 266; *Hamilton v. Traber,* 78 Md. 34, 27 Atl. 229.

*Wood v. Throckmorton,* 26 Colo. 248, 57 Pac. 699, cited as contra to the conclusions here reached does not rule the question before us, the court there declined permission to a lunatic, by a next friend, to question the appointment of a conservator, saying, that as it affirmatively appeared that it was to the best interest of the lunatic to retain the then conservator and as it was within the court's discretion to refuse to permit the appointment to be questioned it would decline to do so and for this reason alone dismissed the writ of error.

It did not appear in the present case that it was to the interest of the lunatic to retain Jones.

Judgment affirmed.                                 *Affirmed.*