### MARTIN v. O'REILLY, Co. Judge.

No. 12248—Opinion Filed May 10, 1921.

(Syllabus.)

**1. Insane Persons—Appointment of Guardian—Necessity for Notice—Statute.**

Section 6538 of the Revised Laws of 1910 provides: "When it is represented to the county court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the judge must cause notice to be given to the supposed insane or incompetent person, of the time and place of hearing the case, not less than five days before the time so appointed, and such person, if able to attend, must be produced before him on the hearing." Held: In a proceeding for the appointment of a guardian of a person upon the ground that such person is mentally incompetent to manage his property, that the provisions of said statute are mandatory, and unless the prescribed notice is given the court is without jurisdiction to hear and determine such proceeding.

**2. Same—Validity of Order of Appointment—Collateral Attack.**

An order of a county court appointing a guardian for an alleged incompetent having been made on the same day that the petition was filed, without notice and without the alleged incompetent having been produced before the court, or it being shown that said alleged incompetent was unable to attend, and without a full hearing and examination upon the petition, such order is void and subject to collateral attack.

**3. Prohibition — Right to Writ—Arbitrary Action of Court in Appointment of Guardian for Incompetent.**

The action of a county court, sitting in probate, in appointing a guardian for an alleged incompetent without notice and without the alleged incompetent being present and without a full and fair hearing upon the petition, and setting an appeal bond in the sum of $7,500 upon notice by the

alleged incompetent of her intention to appeal from said order appointing a guardian, constitutes an unwarranted and arbitrary use of judicial power and prohibition is the proper remedy to prevent such unauthorized application of such judicial force.

Original Action for Writ of Prohibition.

Proceeding by Castello Martin against E. I. O'Reilly, County Judge of McIntosh County, for writ of prohibition. Writ granted.

Franklin Griggs, for relator.

W. E. Disney, for respondent.

JOHNSON, J. This is an original proceeding in this court on the part of Castello Martin, relator, against E. I. O'Reilly, county judge of McIntosh county, Oklahoma, as respondent, praying that a writ of prohibition do issue. After notice so to do, the respondent has filed a response. The petition of the relator and the response of the respondent, without dispute, disclose that the relator is a Creek freedman, duly enrolled as such on the Creek freedman roll. The record determines the date of her birth to have been on the 12th day of April, 1903; and that there was allotted to her and under the date of January 26, 1909, she received patent to the northeast quarter of the northeast quarter and the west half of the northeast quarter of section eighteen (18), in township eighteen (18), north of range ten (10) east, as her surplus allotment; and as her homestead allotted the southeast quarter of the northeast quarter of the same section, situated in Creek county, Oklahoma; and that thereafter her mother, with whom she resided in McIntosh county, was duly appointed as the guardian both of her person and estate as a minor, and has continued to so act ever since; that the relator attained the age of 18 years on April 12, 1921, and that just prior to said date, to wit, on April 11, 1921, her said mother and guardian, acting by and through her attorney, filed in the county court of McIntosh county a petition which was as follows:

"Comes now Sarah Martin and shows to the court that she is the mother and present legal guardian of Castello Martin; that she and said Castello Martin are both residents of the city of Checotah in McIntosh county, Oklahoma; that the said Castello Martin attained the age of 18 years on or about the 11th day of April, 1921; that the said Castello Martin is the owner of valuable oil and gas lands located in the county of Creek and state of Oklahoma, described as follows: 'The east half of the northeast quarter, and the northwest quarter of the northeast quarter of section eighteen (18), township eighteen (18) north, range ten (10) east, containing 120 acres, more or less.' That said land is of the probable value of $15,000.00; that producing wells have been found in the vicinity of said land.

"Petitioner further shows to the court that the said Castello Martin is mentally incompetent to manage her said property; that she is young and without any business experience; that it is necessary that a guardian be appointed by this court over the person and estate of the said Castello Martin in order to lease the same for oil and gas purposes, and to collect the rentals and royalties accruing therefrom and to otherwise manage said estate for the best interest of the said Castello Martin; that petitioner is informed and believes that certain designing persons are attempting to procure a deed or lease on her said land without valuable consideration upon her attaining her majority and for this reason believes that a guardian should be appointed for said Castello Martin instanter.

"Wherefore petitioner prays that a guardian be appointed at once as above stated.
"Sarah Martin.
"Mother of Castello Martin.
"By J. G. Schofield, her attorney.
"State of Oklahoma, County of McIntosh, ss.:

"J. G. Schofield of said county being sworn states that the facts and statements set out on the foregoing petition are true as he verily believes; that he had made personal investigation of the things set out in said petition, and knows of his own knowledge that the facts therein contained are true; that he verifies this petition as the friend of the said Castello Martin and as attorney for Sarah Martin, her mother.
"J. G. Schofield.

"Subscribed and sworn to before me this 11th day of April, 1921.
"Edith Hedges, Notary Public.
"My commission expires, May 7, 1921.
(Seal)

"Endorsed: Filed April 11th, 1921, B. F. Venator, County Clerk, McIntosh County, Oklahoma, by Celia Hays, Deputy. Recorded in Guardian's Record No. 7, page 276."

Which petition, together with a written waiver, was filed in said court, and the court, without causing notice to be given to the relator, did on said 11th day of April, 1921, make the following order, to wit:

"Now on this 11th day of April, 1921, this cause coming on to be heard upon the petition of Sarah Martin for the appointment of Sarah Martin as guardian of the person and estate of Castello Martin, an incompetent and it being first proven that notice of this hearing (A) is deemed unnecessary further than the notice already given and said petitioner, appearing by her attorney and the court having heard the evidence offered in said cause, and being fully advised in

the premises, it is ordered that Sarah Martin be and is hereby appointed guardian of the person and estate of the above named Castello Martin, the estate consisting of the east half of the northeast quarter, and the northwest quarter of the northeast quarter of section eighteen (18), township eighteen (18), range ten (10), east, in Creek county, Oklahoma, and that letters of guardianship issue to Sarah Martin upon her taking and subscribing the oath required by law, and executing a bond to said Castello Martin in the penal sum of five hundred dollars, with sureties approved by the judge of the said court.

"E. I. O'Reilly, Judge."

Thereafter, on said date, in pursuance of said order the said Sarah Martin filed a bond, with sureties, which was approved by the respondent as judge; and thereafter, on the 15th day of April, 1921, the said Sarah Martin presented to the county court of said county, her petition praying that the order theretofore made on April 11, 1921, appointing her, the said Sarah Martin, as guardian of the relator as an incompetent, be vacated and held for naught. The petition for the vacation of said order and the proceedings had thereon on April 15, 1921, were as follows:

"Now comes Sarah Martin, the same person and individual who had heretofore filed a petition herein for the appointment of a guardian for her daughter, Castello Martin, above named, as of the 11th day of April, 1921, and further petitioning, states to the court, and alleges the facts to be, that her said petition, insofar as it was her petition, was based upon information theretofore given her and upon which she was induced to rely as to its truth and in which she was led to believe at the time and before her said petition herein had so been filed, but that she has since found it to have been false and untrue and has learned, and now believes the fact so to be and to have been, and is most desirous of all to withdraw, confute and deny any statements that she may have made, whether in her said petition so hereinbefore filed, or otherwise or elsewhere that her said daughter, Castello Martin above named, is, or has been, or ever was, incompetent, into the making of any or of all which statements she now states and alleges she was led and to which she was induced by what she has since found to be false, misleading and untrue telephone suggestions and intimations of all which she has since determined to her own satisfaction and belief were so false and untrue, and in fact unwarranted, either in their statement, nature or effect, and she further states and alleges the fact to be that there never has been any other evidence, representation or even suggestion of the incompetency of any of the members of the family.

"Wherefore, she now prays and requests that she be allowed to withdraw her petition aforesaid as so hereinbefore made and filed, and that her assumed appointment as guardian for her said daughter, Castello Martin above named, as an alleged incompetent, presumably pursuant thereto, be annulled, vacated and set aside, to be forever held for naught, and that all, each and every one of the proceedings had or done in that behalf be now quashed, and that as and under her said presumed appointment as such guardian she has never had or received, nor has she ever been in possession of any of the assets of the said purported estate of the said Castello Martin above named, as such an incompetent, since the time of her said pretended and assumed appointment as such a guardian herein, she be hence discharged as such, and that she and her sureties on her bond as such supposed guardian be hence and forever released and discharged, and that all of the proceedings hereinbefore had be quashed, vacated, annulled and set aside, to be forever hereafter held for naught.

"Sarah Martin.

"State of Oklahoma, McIntosh County, ss:

"Sarah Martin being first duly sworn on her oath says that she is the petitioner herein and has had read to her and knows the contents of her foregoing supplemental petition herein and is apprised and advised of their true meaning, import and intent, and that the facts, matters, statements, allegations and things therein stated and set forth are true of her own personal knowledge.

"Subscribed and sworn to before me this the 15th day of April, 1921.

"B. F. Venator, Court Clerk.
"By C. O. White, Deputy."

(Seal)

"Now on this day came Sarah Martin, petitioner herein petition praying that she be allowed to withdraw her petition heretofore filed April 11th, 1921, and that her assumed appointment as guardian for her said daughter, Castello Martin, as an alleged incompetent, presumably pursuant thereto be annulled, vacated and set aside, to be forever held for naught and that all each and every of the proceedings had or done in that behalf be now quashed and that as and under her said appointment as such guardian she has never had or received, nor has she ever been in possession of any of the assets of the said purported estate, of the said Castello Martin above named, as such incompetent, since the time of her said pretended and assumed appointment as such a guardian herein, she be hence discharged as such and that she and her sureties on her bond as such supposed guardian be hence and forever released and discharged and that all of the proceedings hereinbefore had be quashed, annulled and set aside, to be forever hereafter held for naught.

"Petition heard and overruled, to which ruling of the court petitioner excepts, and gives notice of appeal to the district court. Appeal bond fixed at $7,500."

The relator further alleges in her petition:

"That the pretended proceedings aforesaid so and thus undertaken for the appointment for your petitioner of a guardian of her person and estate as an incompetent person were so entertained, had and taken without the knowledge and consent of this petitioner and without any pretense of or attempt at notice to her thereof, and have thus pretendedly proceeded wholly without and beyond the jurisdiction of the said county court in and for the said county of McIntosh in the said state of Oklahoma, and that the said defendant herein, E. I. O'Reilly, above named, acting in his said capacity as the judge thereof, then and there stated in open court from the bench and while it was in session that it was his purpose and intent to retain and maintain the proceedings aforesaid, notwithstanding the said supplemental petition of the said mother of your petitioner, the said Sarah Martin, or any others that might be offered or submitted and retain his jurisdiction thereof and proceed therewith. That this petitioner is, in truth and in fact, wholly competent to have charge of her said property and to manage her own affairs, and that there never was any necessity or occasion for the appointment for her of a guardian as an incompetent person nor has there ever been any finding or determination in any court that your petitioner ever was or is now an incompetent person nor any hearing ever had upon that issue or any evidence submitted or offered to any court thereof and that the quotations aforesaid from the records of the said county court in and for the county of McIntosh and state of Oklahoma made up a complete transcript and are a full, true and correct copy and disclosure of all of the records or proceedings of that court had, made or done in the matter of the said pretended guardianship. That the said defendant herein, E. I. O'Reilly above named, is thus assuming and pretending, as such county judge and as the judge of the said county court in and for the said county of McIntosh in the state of Oklahoma, to usurp and exercise a judicial power not granted to him or to it by law and is thus attempting to make an arbitrary, excessive and unauthorized use and application of judicial force even though it were a case otherwise properly cognizable by him and by the court aforesaid in excess of his and its constitutional power and lawful authority."

These allegations are denied in part by the respondent, such denial consisting for the most part of allegations and averments to the effect that the converse of the relator's allegations are true, and he urges that the petition of the relator fails to state facts sufficient to constitute a cause of action in favor of relator, or entitling her to a writ of prohibition, and prays that the petition of relator be dismissed and that the respondent recover his costs.

The record further discloses from the affidavits of the relator, her mother, Sarah Martin, and her attorney, Franklin Griggs, that the respondent, as county judge of said county, has attempted and is attempting to take further proceedings in the matter of adjudging the said relator an incompetent; the exact nature of such proceedings is not fully disclosed by the record.

Revised Laws of 1910, sec. 6538, provides:

"When it is represented to the county court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the judge must cause notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time so appointed, and such person, if able to attend must be produced before him on the hearing."

Section 6539, Id.:

"If after a full hearing and examination upon such petition, it appears to the judge of the county court that the person in question is incapable of taking care of himself and managing his property, he must appoint a guardian of his person and estate, with the powers and duties in this article specified."

These provisions of our statutes are similar to, if not identical with the California Code, and the Supreme Court of that state, construing the same in the case of McGee v. Hayes, 59 Pac. 767, held that a failure to give the five days' notice provided by the statute and to have the incompetent present in court rendered the appointment made void and subject to collateral attack. Such was the holding of the Supreme Court of Vermont in Re Lydia N. Allen. 73 Atl. 1078, 26 L. R. A. (N. S.) 232.

In Re Wellman, 45 Pac. 726, by the Supreme Court of Kansas, syllabus paragraph one is as follows:

"An inquiry and trial in the probate court, had upon an information charging one with being a person of unsound mind and incapable of managing her own affairs, should only be had after notice to the person alleged to be insane, and after opportunity has been given such person to be present at the trial, in person or by counsel. An adjudication of insanity that is made without such notice and opportunity to be heard is a nullity, and void, and a commitment thereunder to the insane asylum is illegal".

And in the body of that opinion, Garver, J., speaking for the court, used this language:

"No mere ex parte proceeding can affect either personal or property rights. Were the Legislature to attempt to enact a law authorizing judicial proceedings, the object of which was to affect the person or property of a citizen, without notice or opportunity to be heard, such legislation would be rejected and repudiated in advance as an intolerable outrage upon the rights of the citizen. It would not only be a serious infringement of natural rights, but would be a flagrant violation of the constitutional guaranty that no person shall be deprived of his liberty or property without due process of law. Notice and opportunity to be heard lie at the foundation of all judicial procedure. They are fundamental principles of justice, which cannot be ignored. Without them no citizen would be safe from the machinations of secret tribunals, and the most sane member of the community might be adjudged insane and landed in the madhouse. It will not do to say it is useless to serve notice upon an insane person, that it would avail nothing, because of his inability to take advantage of it: His sanity is the very thing to be tried. At the threshold of the inquiry, the court is supposed to have no knowledge of the mental condition, but the presumption of the law is in favor of sanity. Insanity, like crime, does not exist in law, until it is established by evidence in a proper proceeding. A trial without notice, a mere ex parte proceeding, has no proper place in a court of justice. It is a nullity, and void, as affecting those not parties to it. Actual appearance at the trial is, of course, not necessary. There are many cases in which the parties are so mentally disordered that they cannot appear. All we mean to decide is that the right to appear must be preserved, and opportunity afforded to do so, in person or by counsel, as far as the circumstances will admit."

In Re Lambert, 134 Cal. 626, 55 L. R. A. 856, 86 Am. St. Rep. 296, 66 Pac. 851, it was held that a statute which permitted commitment to and retention in a hospital for the insane, upon an application by a relative or a friend of the alleged insane person, or by any one of certain officials, accompanied by the certificate of two physicians, without any provision for notice to the alleged insane person, was unconstitutional, as depriving him of liberty without due process of law. In Jones v. Learned, 17 Colo. App. 76, 66 Pac. 1071, it was held that, although a statute providing for the appointment of conservators of lunatics did not in terms require notice to be served upon the lunatic, such notice was necessary, since such appointment in effect deprived him of his liberty and of the possession and control of his property, without giving him an opportunity to be heard. Where a statute requires notice to the alleged lunatic, an inquisition without notice is null and

void. Behrensmeyer v. Kreitz, 135 Ill. 591, 26 N. E. 704; Winslow v. Troy, 97 Me. 130, 53 Atl. 1008; Albright v. Rader, 13 Lea, 574; Shumway v. Shumway, 2 Vt. 339; South Penn. Oil Co. v. McIntire, 44 W. Va. 296, 28 S. E. 922. And so it has been held, although the statute is silent upon the question of notice. Jones v. Learned, supra; Mason v. Beazley, 10 Ky. L. Rep. 154; Stewart v. Taylor, 111 Ky. 247, 63 S. W. 783; Taylor v. Moore, 112 Ky. 330, 65 S. W. 612, 26 L. R. A. (N. S.) 233, note.

Under the statutes of this state, supra, we think there can be no doubt but in the instant case the court has jurisdiction to appoint guardians for incompetent persons, but only upon the five days' notice required by statute to be given, and on a hearing had, and where it can reasonably be done the presence of the party charged is indispensable in making the appointment. These provisions are mandatory, and should in every instance be complied with. This was not done in this case, and therefore the appointment of Sarah Martin as guardian of the relator as an incompetent is a nullity and subject to collateral attack. We think, also, that the action of the respondent in overruling the motion to vacate and in refusing to vacate the order making such appointment for the reason stated, is likewise a nullity, and that the declaration of the respondent in open court of his intention to retain jurisdiction of the cause at all hazards and his fixing the appeal bond at seven thousand five hundred ($7,500) dollars were arbitrary and unwarranted. If the court had been vested with jurisdiction to make an order, then both Sarah Martin and the relator would have had the right to appeal therefrom to the district court by giving a reasonable appeal bond. On appeal to the district court the court would have tried the cause de novo, and a bond in an amount sufficient to cover the cost is all that the court should have required, and it cannot be said that a bond in anything like the amount fixed by the court was necessary for that purpose, and it has been shown that neither of the parties was able to make a bond in such sum, of which the court was informed, so that the order fixing the bond in said sum had the effect of depriving the parties of the statutory rights of appeal, and was therefore arbitrary and unjust, and was on the part of the court an unwarranted exercise of judicial force, and, therefore, we think that the relator is entitled to a writ of prohibition. Haskell, Gov., v. Huston, Judge, 21 Okla. 782, 97 Pac. 982; Hirsh et al. v. Twyford et al., 40 Okla. 220, 139 Pac. 313; Burnett v. Jackson, Judge, 27 Okla. 275, 111 Pac. 194, 22 R. C. L. pp. 5-8, 27, 28; Parmenter, Guardian, v. Rowe,

County Judge, decided March 29, 1921 (pending on rehearing).

It is ordered that the same do issue prohibiting the county judge of McIntosh county from proceeding with said cause until notice of the hearing is given as prescribed by the statute.

HARRISON, C. J. and MILLER, KENNAMER, and ELTING, JJ., concur.