## LOMAX v. PICKERING.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 123. Submitted January 12, 1899. — Decided February 20, 1899.

A record in the Department at Washington of the approval by the President of a deed made by an Indian to convey lands held by him subject to the provision in the treaty of Prairie du Chien that it was never to be leased or conveyed without the permission of the President, is notice to all concerned from the time it was made, and is similar, in effect, to a patent issued by the President for lands that belong to the Government, which is not required to be recorded in the county where the land is located.

The recording of a deed of such land, made without previous approval of the President, is notice of the grantee's title to subsequent purchasers; and, when approved, operates to divest the title of the grantor as against a subsequent grantee.

THIS was an action of ejectment brought by Aquila H. Pickering against John A. Lomax and William Kolze to recover possession of two parcels of land in Cook County, Illinois, which had originally been granted by the United States to certain Indians under the treaty of Prairie du Chien, of July 29, 1829.

This case was before this court upon a former hearing, *Pickering* v. *Lomax*, 145 U. S. 310, the report of which contains a full statement of the facts, which need not be here repeated. Upon that hearing the judgment of the Supreme Court of Illinois was reversed, and the case remanded for a new trial, which resulted in a judgment for Pickering, the plaintiff, and in an affirmance of that judgment by the Supreme Court of Illinois. *Lomax* v. *Pickering*, 165 Illinois, 431. To review this judgment a second writ of error was sued out from this court.

*Mr. John M. H. Burgett* for plaintiff in error. *Mr. James Maher* and *Mr. A. W. Browne* were on his brief.

*Mr. John P. Ahrens* for defendant in error.

Mr. Justice Brown, after making the above statement, delivered the opinion of the court.

The common source of title in this case was Alexander Robinson, an Indian, to whom the lands were patented by President Tyler, December 28, 1843, under the provisions of Art. IV of the treaty of Prairie du Chien, 7 Stat. 320, subject to the following proviso : "But never to be leased or conveyed by him," (the grantee,) "them, his or their heirs, to any person whatever, without the permission of the President of the United States." The lands were subsequently allotted and set off to Joseph Robinson, one of the patentee's children, by a decree in partition of the Cook County Court of Common Pleas.

Pickering claimed title through a deed from Joseph Robinson and wife to John F. Horton, dated August 3, 1858, recorded July 16, 1861, but without the approval of the President endorsed thereon. The deed was, however, submitted to and approved by the President, January 21, 1871, and a certified copy of the deed with such approval recorded March 12, 1873.

Lomax's title was by deed from Joseph Robinson to Alexander McClure, dated November 22, 1870, submitted to and approved by the President, February 24, 1871, and recorded March 11, 1871, in Cook County.

Upon the first trial, plaintiff's chain of title being proved the defendant Lomax introduced no evidence, but at the close of plaintiff's testimony moved that the case be dismissed upon the ground that the deed of August 3, 1858, from Joseph Robinson and wife to Horton was made in direct violation of the terms of the patent, which required the approval of the President to the conveyance. This motion was granted, the court being of opinion that Robinson had no authority to convey without obtaining prior permission of the President, and that the subsequent approval of the deed was invalid. Thereupon judgment was rendered for the defendant, which was affirmed by the Supreme Court of Illinois. 120 Illinois, 289, 293.

The case was reversed by this court upon the ground that

the approval subsequently given by the President to the conveyance was retroactive, and was equivalent to permission before execution and delivery. The case went back for a new trial, when Lomax put in evidence the title above stated, relying upon a sentence in the opinion of this court to the effect that "if, after executing this deed, Robinson had given another to another person with the permission of the President, a wholly different question would have arisen." Judgment having been rendered for the plaintiff, the case was again taken to the Supreme Court of the State, which was of opinion that the defendant did not stand in the relation of a *bona fide* purchaser to the property.

It will be observed that the deed to Horton of August 3, 1858, antedated the deed to McClure of February 22, 1870, by more than twelve years, and was recorded July 16, 1861, while the deed to McClure was recorded March 11, 1871, nearly ten years thereafter. The deed to Horton also antedated the deed to McClure in the approval of the President by about a month, viz.: Horton, January 21, 1871; McClure, February 24, 1871.

Defendant, however, relies upon the fact that the McClure deed was recorded with the approval of the President endorsed thereon March 11, 1871, while plaintiff's deed with such approval was not recorded until March 12, 1873. The real question then is whether the recording of the Horton deed of July 16, 1861, without the approval of the President endorsed thereon, was notice of plaintiff's title to subsequent purchasers.

By section 30 of the conveyancing act of Illinois, it is provided that "all deeds, mortgages and other instruments in writing which are authorized to be recorded shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice, and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice until the same shall be filed for record."

The Supreme Court of Illinois was of opinion that the deed to Horton was entitled to record, although it had not received

the approval of the President. In delivering the opinion of the court Mr. Justice Craig observed : "As respects the approval of the President, required by the treaty and the provision in the patent to render the deed effectual, we do not think the recording laws have any bearing upon it. There was a record of the approval of the President in the Department at Washington, and that record was notice to all concerned from the time it was made, and we do not think the recording laws of the State require a copy of that record to be recorded in the recorder's office where the land is located. A record of that character is similar to a patent issued by the President for lands that belong to the Government, which is not required to be recorded in the county where the land is located."

Even if this be not a construction of the state statute binding upon us, and decisive of the case, we regard it as a correct exposition of the law.

The deed is an ordinary warranty deed upon its face, signed by the parties, and regularly acknowledged before a justice of the peace. There was nothing to apprise the recorder of any want of authority to convey, or to justify him in refusing to put the deed on record. Whether the grantors had authority to make the deed as between themselves and the grantees, or subsequent purchasers, is a matter which did not concern him. Though the deed might be impeached by showing that the grantor had no such authority, the record was notice to subsequent purchasers that they had at least attempted to convey their interests.

A deed may be void by reason of the infancy or coverture of the grantors, and yet may be, under the laws of the State, entitled to record and notice to subsequent purchasers. While the record of a void deed is of no greater effect than the deed itself, and is not such notice as will give protection to a *bona fide* purchaser, yet it may, under certain circumstances, be a notice to intending purchasers, or third persons, that the grantor has intended and undertaken to convey his title. Thus, in *Morrison* v. *Brown*, 83 Illinois, 562, a deed of trust executed by a married woman, her husband not uniting therein,

to secure the purchase money of the property, though void as a conveyance, was nevertheless held to be an instrument in writing relating to real estate within the statute of Illinois, and, when recorded, constructive notice to all subsequent purchasers of the lien of the original vendor upon the same for the unpaid price. The court took the ground that while married women had no force or power to *create* a lien, subsequent purchasers occupied the same position as they would have done had the instrument been read to them before they became interested in the question.

So, in *Tefft* v. *Munson*, 57 N. Y. 97, the record of a mortgage prior to the acquisition of title by the grantor was held to be constructive notice to a subsequent purchaser in good faith, and under the recording act, giving it priority to the title. See also *United States Ins. Co.* v. *Shriver*, 3 Md. Ch. 381; *Alderson* v. *Ames*, 6 Maryland, 52; *Stevens* v. *Hampton*, 46 Missouri, 404.

In this case however, it appears from McClure's own statement that when Robinson came to him in 1870 to sell him his right to the land, he told him that he had already sold the premises, but without the approval of the President, and that McClure sent his own attorneys to examine the record. He thus had not only constructive but actual notice of the Horton deed.

The approval of the President was no proper part of the deed. The language of the restriction in the original patent was " but never to be leased or conveyed by him, [the grantee,] them, his or their heirs, to any person whatever, without the permission of the President of the United States." How that permission should be obtained or expressed is left undetermined by the proviso. We see no reason why it might not have been by a memorandum at the foot of the petition for approval, or even by a letter to that effect. The essential fact was that permission should be obtained and expressed in some form, of which, in all probability, a record was kept in the Department.

Indeed, we think it sufficiently appears that at the time the deed to McClure was approved by the President, February 24,

1871, there was on file in Washington the approval of the President of the prior deed to Horton. There was put in evidence a certificate of the Commissioner of Indian Affairs, signed March 7, 1896, to a certified copy of the Horton deed, with an affidavit as to the loss of the original, a further affidavit that the sale was an advantageous one for Robinson, and the approval of the President, dated January 21, 1871. It does not directly appear when the approval of the President was put on file in the office of the Commissioner, but we think the presumption is that it was filed as of its date. There was nothing requiring that this approval should be filed in the recorder's office in Cook County, and when McClure took his deed of November 22, 1870, and obtained the approval of the President of February 24, 1871, he took it with the chance that the Horton deed had already been approved, and that the power of the President had been exhausted. The approval by the President of his deed was doubtless an inadvertence, and, in view of the fact that he had already approved the Horton deed, a nullity. By his approval of the first deed the title of Robinson was wholly divested, and there was nothing left upon which a subsequent approval could operate, unless we are to assume that such subsequent approval in some way revested the title in Robinson and passed it to McClure. No new delivery was necessary to pass the title to Horton. *United States* v. *Schurz,* 102 U. S. 378 ; *Bicknell* v. *Comstock,* 113 U. S. 149 ; *Gilmore* v. *Sapp,* 100 Illinois, 297 ; *Bruner* v. *Manlove,* 1 Scam. 156. No injustice was done to McClure, since he already had notice, both by the record and by Robinson's statement, that he had conveyed the land, and an examination of the record in Washington would doubtless have shown that the prior deed had received the approval of the President. The two deeds stand in the relation of two patents for the same land, the second of which is uniformly held to be void.

There is nothing in the fact that the partition proceedings, under which Robinson obtained title to the land in dispute, were not approved by the President. Not only were these partition proceedings set forth as a part of the record of the case at the time he approved the Horton deed, but as already

held in the prior case, (p. 316,) such approval was retroactive, and operated as if it had been endorsed upon the deed when originally given, and enured to the benefit of Horton and his grantee, "not as a new title acquired by a warrantor subsequent to his deed enures to the benefit of the grantee, but as a deed imperfect when executed, may be made perfect as of the date when it was delivered."

The judgment of the Supreme Court of Illinois is therefore

*Affirmed.*