## UNITED STATES et al. v. RAICHE et al.

District Court, W. D. Wisconsin. June 15, 1928.

Stanley M. Ryan, U. S. Atty., of Janesville, Wis., and Harold E. Hanson, Asst. U. S. Atty., of Stoughton, Wis., for complainants.

Oliver M. Olson, of Wheaton, Ill., and O'Melia & Kaye, of Rhinelander, Wis., for defendants.

LUSE, District Judge (after stating the facts as above). ■ In my opinion, the paper which purports to be a contract between Saw-bad-deese-once-ish and David Blackbird must be rejected as written evidence of a transaction of sale and purchase, first, because its age is insufficient to warrant its acceptance under the ancient document rule; second, because there was no evidence proving the signatures upon the paper; and, third, because the circumstances of its production are as consistent with nondelivery to Blackbird as with delivery. It is quite clear, also, that there has never been approval of sale of the 6 acres in controversy by the President or the Secretary of the Interior. It is contended, on behalf of the defendants, that the part taken by the Indian farmer and the reservation chief of police indicates approval of the transaction so far as John Frenchman, Sr., was concerned; but such acts were as consistent with preparations for an application for the approval of the President or Secretary of the Interior as with the carrying out of a transaction already approved, or as with an intent to approve on the part of the Indian farmer, assuming that the act of approval was or could be delegated to such a subordinate employee of the department.

It is true that the approval by the Commissioner of Indian Affairs of the expenditure of Blackbird's money, first for the purchase of the land, and later for the erection of a dwelling thereon, hints strongly of departmental approval of the entire transaction; but the proof falls short of showing that the Commissioner of Indian Affairs was advised that Blackbird intended to purchase the land and erect a dwelling upon land purchased from a noncompetent Indian. Hence, so far as the approval of the Commissioner of Indian Affairs is concerned, while it may be, and is, concluded that he gave his approval to the use of Blackbird's funds, it is also concluded that there was no approval given by the Commissioner of Indian Affairs to the sale by Frenchman, Sr., of the lands which he held under a deed containing restrictions upon alienation. Furthermore,

there is no proof that the duty of approving the sale by Frenchman was ever delegated by the President of the United States or the Secretary of the Interior to any subordinate officer or employee. The fact that a record authorized by law was kept of such deeds as were approved by the President or the Secretary of the Interior, and that no record of the transaction in question appears in that book, is persuasive that no such approval was ever given.

Furthermore, the fact that the transaction apparently never proceeded beyond the point where Frenchman, Sr., signed the contract of sale, is indicative that the transaction never reached a stage where it would likely have been submitted either to the President or to the Secretary for approval of a deed. Assuming, as counsel for both sides apparently assume, though there is no proof on the subject, that the funds of Blackbird were under the supervision of the Department of Indian Affairs in the same degree as were the lands of Frenchman under the control of the President, the conclusion is unavoidable that a mistake was made in permitting the expenditure of Blackbird's funds for the purchase of the land and building of a home, without first obtaining a deed from Frenchman, approved by the President or Secretary of the Interior.

■ It is true, also, that neither the treaty in question, nor any statute, nor any regulation which has been brought to the attention of this court, prescribes how the permission of the President or the Secretary of the Interior to alienation by the holder of an allotment with restrictions against alienation, should be expressed. In the second appeal in the case of Lomax v. Pickering, reported in 173 U. S. 26, 19 S. Ct. 416, 43 L. Ed. 601, it is said: "How that permission should be obtained or expressed is left undetermined by the proviso. We see no reason why it might not have been by a memorandum at the foot of the petition for approval, or even by a letter to that effect. The essential fact was that permission should be obtained and expressed in some form, of which, in all probability, a record was kept in the department." Nevertheless I am unable to find from the evidence in this case that there was any approval, and the matter must be disposed of on the basis of a transaction which lacked the approval of either the President or the Secretary.

■ The treaty having provided that the lands allotted in severalty to the Indians might be subject to such restrictions as to the President seemed fit, there was ample authority for the restrictions inserted in the patent to Frenchman, and such restrictions have universally been upheld as a proper method by which the government of the United States may exercise that control over the lands of the Indians deemed necessary for the welfare of the latter.

In Starr v. Campbell, 208 U. S. 527, 28 S. Ct. 365, 52 L. Ed. 602, the court had under consideration the same treaty which is involved in the instant case, and the deed there involved was identical with the patent to Saw-bad-deese-once-ish (Frenchman, Sr.). The cases of Schrimpscher v. Stockton, 183 U. S. 290, 22 S. Ct. 107, 46 L. Ed. 203; Pickering v. Lomax, 145 U. S. 310, 12 S. Ct. 860, 36 L. Ed. 716; Id., 173 U. S. 26, 19 S. Ct. 416, 43 L. Ed. 601, and Lykins v. McGrath, 184 U. S. 169, 22 S. Ct. 450, 46 L. Ed. 485, all involve treaties and patents very similar to those involved here, and all, either directly or indirectly, hold that the restrictions are effective, and that conveyances made without official approval are ineffective.

■ The bona fides of the transaction was held to be beside the point in United States v. Brown, 8 F.(2d) 564 (C. C. A. 8), in which it is said: "The bona fides of these conveyances is unimportant. Whether the disposition of this land was made in good faith or upon commendable considerations cannot be made to affect this decision, which involves a public policy of far-reaching consequences."

Indeed, it seems this must be the correct rule, else the effectiveness of such restrictions would be readily frittered away. In United States v. Walters (D. C.) 17 F.(2d) 116, a purchase of land by another Indian from a trust allottee was held invalid, and the trust allottee was held not required to return the purchase money as a condition of setting aside his deed.

■ Defendants' counsel urge that, inasmuch as Blackbird was equally incompetent with Frenchman, Sr., the law should be applied as it would be between equally competent whites, and rely on the Wisconsin rule that payment of the purchase price, followed by possession of real property by the purchaser, will take an oral contract out from the condemnation of the statute of frauds (St. Wis. 1927, §§ 240.08, 240.09), and in proper case form the basis of a decree for specific performance of such oral contract. Such rule is freely applied under the Wisconsin law, in cases where the remedy at law is inadequate. Henrikson v. Henrikson, 143 Wis. 314, 127 N. W. 962, 33 L. R. A. (N. S.) 534. The argument has considerable appeal.

Nevertheless, it assumes, mistakenly, the same disability on the part of Blackbird in the use of his funds as attached to Frenchman in the restriction upon alienation.

But the proof as to the status of Blackbird and his funds is extremely sketchy and informal. The testimony of the Indian agent is that there is nothing in the agency books showing payment by Blackbird for the land in question, and the only proof of such payment is the oral testimony of the cashier of the Stearns Lumber Company that such company's books show the transfer of the credit, above mentioned. The books themselves were not produced. How the lumber company became the custodian of such funds, and doled them out as a sort of subsidiary Indian agency, is not explained, except as the testimony indicates that it was actually done. Hence it is concluded that the premise upon which the argument is based is not satisfactorily established. As the proof stands, the very clear effect of the restriction upon Frenchman's right of alienation should not be offset by the unsatisfactory showing of Blackbird's alleged incapacity, even were it, if proven, sufficient to have that effect. Furthermore, assuming such incapacity on the part of Blackbird were proven, if such argument were to prevail, it would entail the grafting of an exception upon the restriction in Frenchman's deed, to the effect that a sale to another incompetent Indian was not within the purview of the restriction. This is unwarranted.

Nor are the statutes of limitation of the state of Wisconsin considered an effective defense in this case. Section 330.02, being the 20-year statute, is not applicable, inasmuch as this action was commenced in February, 1925, less than 20 years after entry by Blackbird. Sections 330.06, 330.07, and 330.10, Wis. Stats., providing limitation of 10 years where possession is based upon some written instrument, are inapplicable, inasmuch as no instrument exists describing the land in controversy under which the defendants claim. Elofrson v. Lindsay, 90 Wis. 203, 63 N. W. 89; Zuleger v. Zeh, 160 Wis. 600, 150 N. W. 406. Furthermore, the statute of limitations cannot run against these plaintiffs, who, with respect to this land, are still under disability. Schrimpscher v. Stockton, 183 U. S. 290, 22 S. Ct. 107, 46 L. Ed. 203.

From what has been said, it is apparent that the affirmative relief sought by the defendants in this action should not be granted. Other reasons for denying such relief than those already mentioned readily occur, but it is not thought necessary to deal with them specifically.

The record does not disclose why Veronica Raiche, the wife of the defendant Joseph A. Raiche, was made a party defendant. Apparently the premises are occupied by Joseph A. Raiche with his family, in the ordinary way, although the testimony indicates that Mrs. Raiche was the active one in negotiating the transaction with Antoine. No objection has been made, however, by her, and hence the judgment may go for the plaintiffs for the possession of the lands as against both of the defendants.

Plaintiffs may have judgment for the rents and profits against the defendant Joseph A. Raiche, up to the time of the commencement of this action, in the sum of $1,033.33.