## McELROY v. PEGG et al.
### No. 3561.

Circuit Court of Appeals, Tenth Circuit.
April 19, 1948.

Carloss Wadlington, of Ada, Okla. (Turner M. King, of Ada, Okla., on the brief), for appellant.

A. W. Trice, of Ada, Okla. (Orel Busby, L. H. Harrell, C. L. McArthur, Hobert G. Orton, Thomas P. Holt, Warren B. Kice, and Vernon Roberts, all of Ada, Okla., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Mattie McElroy, nee Harjo, brought this action to quiet the title to a tract of land containing nine acres, situated in Pontotoc County, Oklahoma, and to recover the possession of that portion of such land not in the possession of McElroy.

On October 20, 1919, N. B. Haney, Jr., and Carrie M. Haney, his wife, conveyed a ten-acre tract of land to Lucy Harjo by a Carney-Lachey form of deed. The land was purchased with restricted funds of Harjo and the deed contained a provision restricting alienation thereof by Harjo, except with the consent and approval of the Secretary of the Interior. On September 15, 1928, Harjo, by warranty deed, conveyed to Fred L. Lynn one acre out of such tract of land. That deed was approved by the Secretary of the Interior. On November 17, 1932, Harjo, by warranty deed, conveyed the remaining portion of such land to W. M. Pegg. That deed was not approved by the Secretary of the Interior.

The consideration for the conveyance to Pegg was $500 in cash and the conveyance by Pegg to Harjo, by warranty deed, of a 40-acre tract of land situate in Pontotoc County, Oklahoma. The 40-acre tract adjoined Harjo's allotment. On January 30, 1933, Pegg and Nettie J. Pegg, his wife, by warranty deed, conveyed to McElroy a one and one-eighth-acre parcel of the land acquired by Pegg from Harjo. Such parcel of land was occupied by McElroy. The conveyance was made pursuant to an agreement between Pegg and Harjo. No consideration was paid therefor by McElroy. On July 27, 1936, McElroy, by warranty deed, conveyed a parcel of the one and one-eighth-acre tract to appellee, Orel Busby.

Except the parcel conveyed by McElroy to Busby, appellees, other than Pegg, claim through mesne conveyance from Pegg made between February 18, 1933, and September 21, 1946.

McElroy was present, assisted, and advised Harjo at the time the deed was made from Harjo to Pegg and was fully cognizant that it was made without the approval of the Secretary of the Interior.

As grounds for relief, McElroy set up that the deed from Harjo to Pegg was void because it was not approved by the Secretary of the Interior; that Harjo was incompetent at the time of the execution of such conveyance; that Harjo had been adjudged incompetent in a guardianship proceeding in the county court of Pontotoc County, Oklahoma, and had not been restored to competency; that the consideration for the conveyance by Harjo to Pegg was grossly inadequate; that Harjo died testate on December 26, 1938; and that the land passed to McElroy by the residuary clause of Harjo's will.

The appellees answered and set up their respective claims of title and that each of them had made valuable improvements on the tracts of land conveyed to them prior to the commencement of the instant action.

On October 23, 1918, N. S. Olivo filed a petition in the county court of Pontotoc County, Oklahoma, for the appointment of a guardian for Harjo in which the petitioner alleged that Harjo was an incompetent.

58 Okl.St.Ann. §§ 851 and 852, 58 O.S. 1941 §§ 851, 852, provide:

"§ 851. Petitions for guardians of incompetent or insane persons—Notice.—When it is represented to the county court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the judge must cause notice to be given to the supposed insane or incompetent person, of the time and place of

hearing the case, not less than five days before the time so appointed, and such person, if able to attend, must be produced before him on the hearing."

"§ 852. Guardian appointed, when.—If after a full hearing and examination upon such petition, it appears to the judge of the county court that the person in question is incapable of taking care of himself and managing his property, he must appoint a guardian of his person and estate, with the powers and duties in this article specified."

The record of the guardianship proceedings shows that the county court entered an order setting the petition for hearing on November 7, 1918, and directed that notice thereof be given by service of notice on Harjo, and the posting in three public places in Pontotoc County, and further shows that notice of the application for an appointment of a guardian was issued on October 23, 1918. It does not disclose that the notice was personally served on Harjo.

On November 7, 1918, the county court of Pontotoc County entered an order appointing N. S. Olivo as the guardian of Harjo. It recited that notice of the hearing was given by posting the notice of application for the appointment of a guardian in three public places in Pontotoc County, Oklahoma. It did not recite that the notice was personally served on Harjo. It recited that Harjo appeared in person. It found that Harjo desired the appointment of Olivo as her guardian but did not find or adjudge that Harjo was incompetent or incapable of taking care of herself or managing her property.

This action was commenced October 8, 1946. Notice was served upon the Superintendent for the Five Civilized Tribes, pursuant to § 3 of the Act of April 12, 1926, 44 Stat., Part 2, Ch. 115, p. 240. The United States filed a complaint in intervention in which it sought a cancellation of the deed from Harjo to Pegg on the grounds set up in McElroy's complaint.

The trial court found that the order appointing Olivo guardian of Harjo was void because (1) notice of application for appointment was not personally served upon Harjo and (2) that there was no finding or adjudication that Harjo was incompetent; that Harjo was not incompetent in fact at the time of the execution of the deed from her to Pegg; that the evidence failed to establish any fraud in the procurement of the deed from Harjo to Pegg; and that the consideration paid by Pegg to Harjo was not inadequate.

It concluded that the want of approval by the Secretary of the Interior of the deed from Harjo to Pegg was cured by the Act of July 2, 1945, Public Law 116, 79th Congress, 59 Stat. 313.

From an adverse judgment, McElroy has appealed. The United States did not join in such appeal.

■ The findings with respect to the issues of the incompetency in fact and the inadequacy of the consideration are supported by substantial evidence and are not clearly erroneous. They are binding on this court.[1]

In the case of In re Mize's Guardianship, 193 Okl. 164, 142 P.2d 116, an order had been made appointing a guardian for Elnora Mize, an alleged incompetent. The record did not disclose that personal service was made upon Elnora Mize. She personally appeared at the hearing on the petition for the appointment of the guardian and had joined in such petition. The court held that § 851, supra, requires that notice of the time and place of the hearing shall be served personally upon the alleged incompetent not less than five days before the time appointed for the hearing, that failure to personally serve notice was not cured by the personal appearance of the alleged incompetent at the hearing, and that the order of appointment was void. In Martin v. O'Reilly, 81 Okl. 261, 200 P. 687, the court held that the requirement that notice of the hearing on the application for the appointment of a guardian be personally served upon the alleged incompetent was jurisdictional and that an order appointing a guardian, where no personal service was made upon the alleged incompetent, was void and subject to collateral attack. In Colby v. Jacobs, 179 Okl. 170, 64 P.2d 881, the court held that

---

[1] North American Acc. Ins. Co. v. Allentharp, 10 Cir., 164 F.2d 9, 11.

the requirement that notice of the hearing on the application be personally served upon the alleged incompetent was jurisdictional and, without the service of such notice, the court acquired no jurisdiction to make an adjudication of incompetency or to appoint a guardian.

Here, there was no showing of personal service upon Harjo and it was a reasonable inference from the recitals in the order of appointment that notice was not personally served upon Harjo. Moreover, the order of appointment did not find or adjudge the statutory grounds for the appointment of the guardian.

■ It follows that the order appointing a guardian for Harjo was void and created no presumption of the incompetency of Harjo.

Section 1 of the Act of July 2, 1945, supra, in part reads:

"That no conveyance made by an Indian of the Five Civilized Tribes on or after April 26, 1931, and prior to the date of enactment of this Act, of lands purchased, prior to April 26, 1931, for the use and benefit of such Indian with funds derived from the sale of, or as income from, restricted allotted lands and conveyed to him by deed containing restrictions on alienation without the consent and approval of the Secretary of the Interior prior to April 26, 1931, shall be invalid because such conveyance was made without the consent and approval of the Secretary of the Interior."

In Goddard v. Frazier, 10 Cir., 156 F. 2d 938, we held that § 3 of the Act of July 2, 1945, supra,[2] was valid and constitutional.

The restriction against alienation without approval of the Secretary of the Interior in the habendum clause in the deed from the Haneys to Harjo was imposed by virtue of Regulation 20,[3] promulgated by the Secretary of the Interior, pursuant to § 1 of the Act of May 27, 1908, 35 Stat. 312. The validity of that Regulation has been settled by repeated adjudications.[4]

■ Congress has plenary power to impose, continue, remove, qualify, or reimpose restrictions with respect to the conveyance of Indian lands.[5]

■ The Secretary of the Interior could have approved the conveyance from Harjo to Pegg after the death of Harjo and such approval would have related back to the date of the deed and would have cut off the rights of McElroy under Harjo's will.[6]

■ Regulation 20, supra, has the force and effect of law.[7]

■ Congress, by curative statute, could

[2] Section 3 of such Act reads:
"That no order, judgment, or decree in partition made, entered, or rendered subsequent to the effective date of the Act of June 14, 1918 (40 Stat. 606), and prior to the effective date of this Act, and involving inherited restricted lands of enrolled and unenrolled members of the Five Civilized Tribes, shall be held null, void, invalid, or inoperative, nor shall any conveyance of any land pursuant to such order, judgment, or decree be held null, void, invalid, or inoperative because the United States was not a party to such order, judgment, or decree, or to any of the proceedings in connection therewith, or because the United States, its agents, or officers, or any of them, was not served with any notice or process in connection therewith, and all such orders, judgments, decrees, and conveyances, which are subject to attack solely by reason of any of the infirmities enumerated by this section, are hereby confirmed, approved, and declared valid."

[3] C.F.R., Title 25, § 241.44.
[4] Sunderland v. United States, 8 Cir., 287 F. 468, 471; Id., 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L.Ed. 259; Board of County Commissioners v. Seber, 318 U.S. 705, 710, note 3, page 708, 63 S.Ct. 920, 87 L.Ed. 1094; United States v. Brown, 8 Cir., 8 F.2d 564, 565; Hass v. United States, 8 Cir., 17 F.2d 894, 896.
[5] United States v. Getzelman, 10 Cir., 89 F.2d 531, 536; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 887; State of Oklahoma v. United States, 10 Cir., 155 F.2d 496, 499.
[6] Lykins v. McGrath, 184 U.S. 169, 171, 172, 22 S.Ct. 450, 46 L.Ed. 485; United States v. Getzelman, 10 Cir., 89 F.2d 531, 535. See, also, Lomax v. Pickering, 173 U.S. 26, 19 S.Ct. 416, 43 L.Ed. 601; Hampton v. Ewert, 8 Cir., 22 F.2d 81, 90, 91.
[7] Regents of New Mexico v. Albuquerque Broadcasting Co. 10 Cir., 158 F.2d 900, 906.

validate anything it might have authorized previously, or make immaterial anything it might have omitted from a previous enactment. Mr. Cooley, in his work on Constitutional Limitations, 8th Ed., Vol. II, p. 775, states the rule thus: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute." The rule stated by Cooley was approved in Mattingly v. District of Columbia, 97 U.S. 687, 24 L.Ed. 1098.[8]

 Congress, under its plenary power, could have provided that lands purchased with restricted funds of a member of the Five Civilized Tribes and conveyed to such member could be conveyed by such member without the approval of the Secretary of the Interior. Acting through the Secretary of the Interior, by virtue of its delegation of power to the Secretary, Congress provided that lands so purchased could not be conveyed by the grantee except with the approval of the Secretary of the Interior. Since it could have omitted that requirement in the first instance, Congress had power by a curative statute to make the lack of such approval immaterial and to validate deeds made without such approval.[9]

While McElroy took as devisee under the will of Harjo as an instrument of conveyance and not by descent as an heir,[10] she was in no sense an innocent purchaser for value. She knew the deed from Harjo to Pegg had not been approved by the Secretary of the Interior. She paid no value. She accepted from Pegg a conveyance of the portion of the land included in the deed from Harjo to Pegg. She merely succeeded to Harjo's

rights which were subject to being cut off by the approval of the deed by the Secretary of the Interior, or by Congressional enactment rendering such approval unnecessary.[11]

Accordingly, we conclude that § 1 of the Act of July 2, 1945, is constitutional.

The judgment is affirmed.

---

[8] See, also, Goddard v. Frazier, 10 Cir., 156 F.2d 938, 941.

[9] Goddard v. Frazier, 10 Cir., 156 F.2d 938, 941; Mattingly v. District of Columbia, 97 U.S. 687, 24 L.Ed. 1098.

[10] Copeland v. Johnson, 101 Okl. 228, 224 P. 986, 989; La Motte v. United States, 254 U.S. 570, 579, 41 S.Ct. 204, 65 L.Ed. 410.

[11] Spencer v. Lewis, 39 La.Ann. 316, 1 So. 671, 672; Bradsher v. Hightower, 118 N.C. 399, 24 S.E. 120, 122; Neppach v. Norval, 116 Ore. 593, 242 P. 605, 609; Reid v. Reid, 230 Ky. 835, 20 S.W.2d 1015, 1016; Hobbs v. Lenon, 191 Ark. 509, 87 S.W.2d 6, 10; Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169, 1174.