## In re EMERALD OUTDOOR ADVERTISING, L.L.C., Debtor.

### No. 03–03851–W11.

United States Bankruptcy Court, E.D. Washington.

Oct. 31, 2003.

John F. Bury, Murphy, Bantz & Bury, P.S., Spokane, WA, Michael J. Murphy, Groff, Murphy, Trachtenberg & Everard, PLLC, Seattle, WA, for Emerald Outdoor Advertising, LLC.

John D. Sullivan, Short Cressman & Burgess, PLLC, Seattle, WA, for Gold Eagle Gaming, LLC,

Jason M. Whalen, Eisenhower & Carlson, PLLC, Tacoma, WA, for Tiffany Jane Harrison,

MEMORANDUM DECISION RE: HARRISON'S MOTION FOR RELIEF FROM STAY AND EMERALD'S MOTION TO ASSUME EXECUTORY CONTRACTS AND LEASES

PATRICIA C. WILLIAMS, Chief Judge.

This dispute involves the competing interests of a leaseholder and a lienholder in Indian trust land. The lienholder maintains that its non-judicial foreclosure under state law terminated the lessee's interest. The debtor, who holds the lessee's interest, maintains that due to defects in the recording and processing of title documents, the lienholder's interests were inferior to those of the debtor and the foreclosure had no effect on the debtor's interests in the property.

The specific matters before the court are the debtor's request to assume the leases and a request by the lienholder to lift the automatic stay. Resolution of these specific matters and the underlying dispute between the parties involves the interplay of federal and state statutes in the context of a foreclosure of an interest in Indian trust land. A simplified chart with a chronology of the events is attached to this opinion.

## FACTUAL HISTORY OF THE DISPUTE

On June 13, 1994, Roleen Williams Hargrove (hereinafter "Hargrove"), an enrolled member of the Puyallup Tribe of Indians, granted a Deed of Trust to Business Finance Corporation (hereinafter "BFC"). In 1994, that Deed of Trust, which concerned Indian trust land, was recorded in Pierce County, Washington, the location of the Indian trust land. The Bureau of Indian Affairs (hereinafter "BIA") generally administers and regulates Indian affairs, including Indian trust land. The Deed of Trust was not recorded with the BIA until 1997. The BIA issued a certificate approving the Hargrove Deed of Trust to BFC in 1994, although the effect of that certificate is in dispute.

In 1995, Hargrove entered into two leases with Emerald Outdoor Advertising, L.L.C. (hereinafter "Emerald"). These leases granted Emerald the right to construct and maintain three billboards upon portions of the real property which was subject to the Deed of Trust. Promptly after execution of the leases, Emerald recorded the leases with the BIA and obtained its approval of the leases. It did not record them with Pierce County.

BFC assigned its beneficial interest under the Deed of Trust to Gold Eagle Gaming, L.L.C. (hereinafter "Gold Eagle") and to John Soh on January 2, 1996. That assignment was promptly recorded in Pierce County. Four months later, the assignment was also recorded with BIA. At the end of 1997, John Soh assigned his one-half beneficial interest under the Deed of Trust to Gold Eagle. That assignment was recorded with BIA and Pierce County. In March of 1998, Gold Eagle commenced a non-judicial foreclosure proceeding against Hargrove who attempted to prevent foreclosure by bringing an action in the Puyallup Tribal Court. The Tribal

Court ruled favorably for Gold Eagle, but prior to the foreclosure sale, Gold Eagle assigned its beneficial interest under the Deed of Trust to Tiffany J. Harrison (hereinafter "Harrison"), an enrolled member of the Puyallup Tribe of Indians. That assignment occurred on February 8, 2001 and was recorded with Pierce County, but neither recorded with nor approved by BIA. The day following the assignment, Hargrove commenced a Chapter 11 reorganization bankruptcy in the Western District of Washington. Ultimately, a plan was confirmed and the Bankruptcy Court allowed the Deed of Trust to be foreclosed. The foreclosure sale occurred May 31, 2002 with the Trustee's Deed issued to Harrison as successful bidder being recorded on June 7, 2002. The Trustee's Deed was recorded with both the BIA and Pierce County. Tribal Court actions between Harrison and Emerald followed.

## PROCEDURAL HISTORY OF THE CASE

On August 9, 2002, Harrison, as successful bidder at the foreclosure sale and owner of the property, filed a suit against Emerald in the Puyallup Tribal Court seeking to evict Emerald from the real property it had leased and upon which it had constructed billboards. The Tribal Court dismissed this first action without prejudice on procedural grounds on November 6, 2002. On December 16, 2002, Harrison commenced a quiet title action in the Puyallup Tribal Court which sought ejectment of Emerald, damages and declaratory relief.

During the course of that second action, on May 5, 2003, Emerald commenced a Chapter 11 reorganization proceeding in the Eastern District of Washington. The same day, Emerald filed a motion to assume certain executory contracts which motion included the leases which were the

subject of the Tribal Court action and continue to be the source of the dispute between Emerald and Harrison. In addition to objecting to the assumption, Harrison also filed a motion to lift the automatic stay in order to continue with the second Tribal Court action.

Pursuant to the parties' agreement, on June 24, 2003, the Tribal Court action was removed to the United States District Court for the Western District of Washington. After a hearing on the issue of the federal District Court's jurisdiction, that court determined that jurisdiction existed in the Bankruptcy Court for the Eastern District of Washington under 28 U.S.C. §§ 157, 1334 and 1412. The case was then transferred from the United States District Court for the Western District of Washington to the United States District Court of the Eastern District of Washington which, on August 5, 2003, referred the matter to this Bankruptcy Court.

At the preliminary hearing on the motion to assume leases and lift the automatic stay, the parties agreed that all factual and legal issues in those motions are identical to the now pending adversary proceeding which had been initiated in Tribal Court and ultimately referred to this court.

## LEGAL ISSUES

1. As the recording of the 1994 Deed of Trust did not occur with the BIA until 1997, was the BIA's 1994 approval of the Deed of Trust effective?

2. Which was the proper place of recording, the BIA or Pierce County? As argued by Harrison, the 1994 recording of the Hargrove to BFS Deed of Trust in Pierce County resulted in that Deed of Trust becoming a first priority lien on the trust land. As argued by Emerald, the 1995 recording with BIA of the leases from Hargrove to Emerald resulted in those

leases becoming a first priority encumbrance on the trust land.

3. As no BIA approval was obtained of the assignment of Gold Eagle's beneficial interest under the Deed of Trust to Harrison, was that assignment valid?

4. Did confirmation of the Hargrove bankruptcy reorganization plan preclude re-litigation of these issues?

5. Assuming Harrison properly held the beneficial interest under the Deed of Trust at the time of foreclosure, did the state foreclosure process extinguish Emerald's leasehold interest?

## ISSUE 1—DISTINCTION BETWEEN APPROVAL AND RECORDING

On July 7, 1994, the Puget Sound Agency of the BIA issued a Certificate of Approval of the Hargrove to BFC Deed of Trust. BIA did not record the Deed of Trust in its recording system. In 1997 when Gold Eagle, which then held the lien, attempted to record the Deed of Trust with the Portland Area Agency of BIA, personnel at that agency opined that the failure to record the Deed of Trust rendered the 1994 approval invalid or ineffective until the date of the recording of the Deed of Trust. Emerald now argues that both the approval and recording of a Deed of Trust on Indian Trust land must take place in order to render the Deed of Trust enforceable.

■ Federal courts give deference to an agency's interpretation of its own regulations. *Department of Health & Human Services v. Chater,* 163 F.3d 1129 (9th Cir. 1998). This assumes, however, that the interpretation is in the form of a formal or official pronouncement of the agency. That is not the situation here. The only evidence submitted regarding the BIA's interpretation of its regulations is a letter from and notes of conversations with personnel at one office of the agency opining upon acts taken by another office of the same agency. There is no indication those personnel had any authority to speak for the BIA. Nor are the correspondence or verbal communications official pronouncements.

■ Whether recording is a prerequisite to approval of a transaction regarding Indian trust land requires statutory interpretation. 25 U.S.C. § 483(a) provides that individual owners of Indian trust lands such as Hargrove may execute a Deed of Trust and encumber the trust land "... subject to approval by the Secretary of the Interior" which authority has been delegated to BIA. 25 C.F.R. § 152.22 states that an Indian may not convey an interest in trust land without approval of the BIA. The BIA has discretion whether to approve a transaction and may exercise its discretion based upon its investigation and opinion of the substance of the transaction. *Oglala Sioux Tribe v. Hallett,* 708 F.2d 326 (8th Cir.1983). Any conveyance by an Indian owner of an interest in trust land made without approval of the BIA is void. *Black Hills Institute of Geological Research v. South Dakota School of Mines and Technology,* 12 F.3d 737 (8th Cir. 1993).

■ The BIA is empowered to maintain a recording system reflecting ownership of Indian trust land. 25 U.S.C. § 5. Recording is the acceptance of a title document by the appropriate land title office of BIA which is charged with responsibility to maintain records of ownership. 25 C.F.R. § 150.3. The regulations contemplate recording immediately after approval of the title transfer. "All title documents shall be submitted to the appropriate Land Titles and Records Office for recording immediately after final approval, issuance, or acceptance." 25 C.F.R. § 150.6.

■ The statutes and regulations do not condition validity of the conveyance of trust land upon recording of the conveyance document. Approval of the conveyance requires an exercise of discretion by the BIA, recording is a ministerial act. Recording is not a pre-requisite to either the decision to approve or the effectiveness of the approval. Failure to obtain approval results in certain consequences, i.e., the invalidity of the conveyance. Failure to record the transaction results in other consequences addressed in this opinion, but does not invalidate or delay the validity of the transaction. The Hargrove Deed of Trust was effective when approval was obtained in 1994 and the failure to record that Deed of Trust with BIA did not delay its effective date.

## ISSUE 2—WHAT IS THE PROPER PLACE OF RECORDING—BIA OR PIERCE COUNTY?

■ The Deed of Trust was recorded in Pierce County in 1994. The leases were recorded with the BIA in 1995. The primary legal issue is whether the priority between the competing interests under the Deed of Trust and the leases are to be established by the date of recording with BIA or by the date of recording with Pierce County.

The statutory and regulatory scheme established by Congress authorizes the BIA to maintain a recording system reflecting the transfers of interest in Indian trust land. The BIA also prepares and provides to interested persons title status reports and tract maps. Title documents are given consecutive numbers as they are recorded, although, unlike many state recording systems, they are not stamped with the date of recording. The recording with BIA provides "... constructive notice of the ownership and change of ownership and the existence of encumbrances to the land." 25 C.F.R. § 150.2. Emerald recorded its leases with the BIA in 1995 and that recording provided constructive notice to any third-party of the existence of the leases between Emerald and Hargrove.

Washington's recording scheme relating to real property interests provides that deeds, mortgages and other transfers of interest in land may be recorded with the County Auditor in which the land is located. The recording of a transfer constitutes constructive notice to third-parties of a transfer of ownership or existence of an encumbrance or other transaction which effects an interest in land. *Strong v. Clark*, 56 Wash.2d 230, 352 P.2d 183 (1960). The purpose of the constructive notice in the state system is to protect bona fide purchasers or lienholders, not the owner of the land. *Kim v. Lee*, 145 Wash.2d 79, 31 P.3d 665 (2001).

The state and BIA recording systems both provide constructive notice to third-parties of the transfer of an interest in land. Nothing in the federal statutes or regulations establish or identify any legal rights arising from the constructive notice. In order to determine the effect on the rights of third-parties arising from the constructive notice, one must look to the substantive law. In this particular case, the question at issue is the priority of competing interests in Indian trust land. There is no federal law regarding priority of such interests. Neither 25 U.S.C. § 483 nor the regulations address the ranking of competing interests.

■ The Puyallup Indian Tribe undoubtedly has the authority to enact tribal ordinances which would establish priorities among competing interests in trust land but it has not done so. The tribe could base priority upon the recording date with the BIA with the earliest recorded interest having priority. The tribe could base priority upon some other basis. As the tribe

has adopted no substantive law regarding priority of competing interests in land and the federal law provides none, state law controls.[1]

The conclusion that substantive state law controls this priority dispute results from the application of 25 U.S.C. § 483(a). That statute provides that if an Indian owner of trust land mortgages or encumbers it, that encumbrance may be foreclosed in accordance with Tribal law or if no Tribal law exists, in accordance with state law. The federal statute makes no distinction between the procedure of foreclose and the substantive law of foreclosure. In the absence of Tribal law, substantive state law controls.

The Washington statutory scheme generally renders a properly recorded deed or conveyance prior in right to any later recorded deed or conveyance. *Altabet v. Monroe Methodist Church,* 54 Wash.App. 695, 777 P.2d 544 (1989). Conceptually, the state recording scheme establishes the premise that if notice of a particular transaction has been given, either actual or constructive, that transaction generally takes precedence over any later transaction.

Notice of an interest in land is distinguishable from the substantive law regarding the priority of interests in land. A determination of priority may under applicable statutes be determined by the date of notice, but that determination requires an examination of more than just the date of the notice itself. It is not the notice which gives rise to the status of a first and prior lien but the applicable substantive law. Priority is not solely dependent upon the earliest date of notice but may depend upon the type of transaction. For example, R.C.W. 60.04.061 establishes priority of mechanics liens by the date which materials were first supplied or labor provided not solely by the date of notice of the lien. R.C.W. 60.11.050 regarding crop liens subordinates certain earlier filed liens to later filed liens. The earliest recorded notice of a transfer of an interest in land does not invariably result in a priority for that transfer.

Recording with the Pierce County Auditor operates as constructive notice as does recording with the BIA. In situations involving Indian trust land located in Washington, this results in a duplicate method of providing constructive notice, either recording with the appropriate county auditor or the BIA. The recording systems coexist, but are not inconsistent. They provide two options to constructively notify third-parties that a transfer of an interest in trust land has occurred. Practically this means that the earliest date of recording, whether with the BIA or the county auditor, will operate as constructive notice to third-parties of the transfer. Prudent persons involved in transactions involving a transfer of an interest in Indian trust land may record in both systems, but the earliest recording will result in the earliest constructive notice. The effect of that notice in terms of priority of interest will be determined by state law.

The 1994 Deed of Trust was recorded in Pierce County in that year. That recording operated as constructive notice to the world of that transfer of an interest in

1. This conclusion is consistent with the actions of the Tribal Court. The Puyallup Tribal Court indicated in its appellate decision in *Hargrove v. Gold Eagle Gaming, LLC, 98–561 (1999),* that the Tribal Court, due to the absence of tribal law, would apply the substantive foreclosure law of Washington.

Also, the Deed of Trust itself refers to remedies upon default " ... in accordance with the Deed of Trust Act of the State of Washington."

Indian trust land. Under state law, that Deed of Trust has priority over later occurring transfers absent some countervailing statute granting priority to the later transfer due to the nature of the transfer. Emerald's 1995 recording with BIA of its leases was also constructive notice to the world of that transfer of an interest in land. Under state law, later transfers would be inferior to Emerald's interest absent some countervailing state statute granting priority to a later transfer due to the nature of the transfer. Simplistically, the earliest recording, whether with BIA or the county auditor, is the notice which determines the priority of the interest granted in the recorded document. As the Deed of Trust to BFC was recorded first, it receives priority.

## ISSUE 3—MUST CONVEYANCES BY NON–INDIANS BE APPROVED?

■ The February 8, 2001 assignment by Gold Eagle of its beneficial interest under the Deed of Trust to Harrison was not approved by the BIA. Previous assignments of the beneficial interest under that Deed of Trust had been approved by the BIA. Emerald argues that the assignment to Harrison required approval under 25 U.S.C. § 483, and since no approval was given, the assignment was invalid. Consequently, Harrison had no right to foreclose the Deed of Trust in May of 2002, the foreclosure sale was invalid, and Emerald's leases remained in effect.

The question is whether the assignment of a beneficial interest held by a non-Indian under a Deed of Trust on trust land requires approval by the BIA. None of the relevant statutes specifically address a conveyance of an interest in trust land *to* an Indian. An Indian owner of trust land may convey his or her interest in trust land, but only upon approval of the BIA and absent approval, any such attempt to

convey is invalid. *Black Hills Institute, supra.* The requirement for approval of conveyances *by* Indian owners was originally placed into the 1934 Indian Regulatory Act due to the historical exploitation of Indians. As stated in *Black Hills, supra,* at page 744:

> The current statutory scheme reflects Congress's desire to protect beneficial owners of Indian trust land like Williams regarding disposition of interests in such land. *See* 25 U.S.C. §§ 348, 464, 483; *see also Tooahnippah v. Hickel,* 397 U.S. 598, 609, 90 S.Ct. 1316, 1323, 25 L.Ed.2d 600 (1970) (explaining that the GAA's legislative history "reflects the concern of the Government to protect Indians from improvident acts or exploitation by others"). Congress may very well determine that the historic practice of shielding beneficial owners from their own improvident decisions, unscrupulous offerors, and whatever other evils the enacting Congresses contemplated decades ago is no longer wise. (Footnote omitted) Until it does, however, we are bound to apply the statutes and regulations forbidding such owners from alienating trust land without the Secretary's approval.

The regulations adopted at 25 C.F.R. § 152, et seq., reflect the statute's paternalistic approach. 25 C.F.R. § 152.34 states that an individual Indian owner of trust land may, with approval, sign a Deed of Trust or mortgage. 25 C.F.R. § 5 requires the BIA maintain a copy of every deed executed "by" an Indian which deed must be approved. The requirement for approval is set forth in 25 U.S.C. § 483. That statute states the BIA is authorized "... to approve conveyances, with respect to lands or interests in lands held by individual Indians ...."

Clearly the statute requires approval of any transfer of an individual Indian own-

er's interest in land. Emerald's contention is that any transaction which involves land in which an individual Indian has an interest requires approval by BIA whether or not the Indian owner is a party to the transaction. The statutory phrase "held by individual Indians" modifies the term "lands or interests in lands" and governs interests held by Indians. It does not govern the transfer of an interest which is not held by an Indian. Emerald argues that ambiguity is created by the phrase "with respect to" the land. The assignment of a beneficial interest under a Deed of Trust is certainly a conveyance "with respect to" the land which is subject to the Deed of Trust. Washington law characterizes such beneficial interests as real property interests. *Washington State Dept. of Revenue v. Security Pacific Bank of Washington N.A.*, 109 Wash.App. 795, 38 P.3d 354 (2002). Emerald's broad reading of the federal statute is not supported by the other statutory or regulatory language. 25 U.S.C. § 483(a) authorizes individual Indian owners, subject to approval, to execute mortgages or deeds of trust. 25 C.F.R. § 152.17 refers to sales, exchanges and conveyances "by" Indian owners.

The ambiguity created by the phrase "with respect to" must be considered in light of the paternalistic nature of the statutory scheme. The Congressional intent was not to protect non-Indians who may acquire interests in trust land but to protect the Indian owners. If the statute is read as Emerald suggests, non-Indians who hold encumbrances against trust land would be precluded from transferring their lien interest without prior approval of the BIA even though that transfer was from one non-Indian to another. Holders of deeds of trust and mortgages frequently transfer large batches of mortgages on the secondary mortgage market to other lenders. Large groups of mortgages are frequently assigned to servicing agents who service the underlying transaction on behalf of the holder of the beneficial interest under the Deed of Trust. *Washington State Dept. of Revenue v. Security Pacific Bank, supra.* Requiring approval from BIA of any specific mortgage which relates to trust land would interfere with the secondary mortgage market. Holders of material or crop liens on trust land could not assign those liens without BIA approval. Such results were not intended by the statute and are contrary to its purpose. Nor would it be consistent with the purpose of the statute to require approval of transfers of beneficial or other interests in land from non-Indians to Indians. The statutory and regulatory purpose is the oversight of the transfer of individual Indian owner's interest in trust land, not the oversight of transfers of non-Indian third-party interests.

The history of this particular Deed of Trust indicates that on previous occasions, assignment of non-Indians' beneficial interest in trust land to other non-Indians have been approved by the BIA. For example, when BFC, the holder of the beneficial interest under the Deed of Trust at issue, transferred its beneficial ownership interest to Gold Eagle and John Soh, the assignment was submitted to BIA for approval. Emerald argues that this history demonstrates that BIA approval is required for any transfer of a beneficial interest under a Deed of Trust encumbering Indian trust land. The court disagrees. A party may in an excess of caution take additional steps which are not required by law, but that exercise of prudence does not change the law and render those additional steps mandatory. The federal statutes and regulations do not require approval by BIA of the transfer of a non-Indian's beneficial interest under a Deed of Trust encumbering Indian trust land.

## ISSUE 4—RES JUDICATA EFFECT OF HARGROVE BANKRUPTCY

The Hargrove bankruptcy proceeding in the Western District of Washington resulted in an order approving the sale of the real property which is the subject of the Deed of Trust. That sale was contemplated in the proposed plan. The sale order entered on October 11, 2001 states that Emerald was concerned that the Bankruptcy Court "make clear that property subject to the leases of signs by Emerald Outdoor Advertising LLC be specifically excluded from this order" and the order did so. The plan was confirmed November 29, 2001 and provides that "Gold Eagle/Harrison" would be paid from the sale of the property or if the sale was not successful, "Gold Eagle/Harrison" could foreclose the Deed of Trust. The plan also provided for the assumption of the Emerald leases. Ultimately, the sale was not successful and foreclosure occurred.

Harrison argues since the confirmed plan allowed foreclosure, the Bankruptcy Court must have necessarily determined that Harrison's interests were superior to Emerald. Alternatively, Harrison argues that if the confirmed plan did not necessarily determine the issue, since Emerald could have litigated the issue in the bankruptcy proceeding but did not, it should now be precluded from doing so.

■■■■ The doctrine of claim preclusion bars the re-litigation of claims and issues that were litigated or should have been litigated in a prior action. Broadly stated, claim preclusion is designed to prevent repetitive litigation of the same matters. It ensures the finality of decisions. *Pederson v. Potter*, 103 Wash.App. 62, 11 P.3d 833 (2000). Application of the doctrine requires identity between a prior judgment and a subsequent action as to (1) persons and parties, (2) cause of action, (3) subject matter, and (4) the quality of persons for or against whom the claims are made. *Loveridge v. Fred Meyer, Inc.*, 125 Wash.2d 759, 763, 887 P.2d 898 (1995). The doctrine may be applicable in determining the effect of confirmed bankruptcy plans. *In re Heritage Hotel Partnership I*, 160 B.R. 374 (9th Cir. BAP 1993).

■■■■ A prerequisite to the application of res judicata is a final decision on the subject matter. The Bankruptcy Court never addressed the issue of the competing priority of interests between Emerald and Harrison. It never addressed the validity or enforceability of the assignment from Gold Eagle to Harrison as evidenced by the references in the Bankruptcy Court pleadings "Gold Eagle/Harrison." It could not have been determining the validity of the foreclosure nor the effect of the foreclosure on Emerald's rights under the leases as the foreclosure had not yet occurred. No final decision or final judgment of the Bankruptcy Court concerns the subject matter of this dispute, i.e., the priority between Emerald and Harrison. This is not a situation similar to a default judgment in which a final determination exists and the issue is whether that final determination is enforceable against a party which had an opportunity to litigate the merits of the issue. Here, there is no final determination of the Bankruptcy Court which could be enforced against either Emerald or Harrison and claim preclusion is inapplicable.

Harrison has cited no authority for the proposition that it is mandatory that disputes between third-parties regarding the priority of their interests in estate property be determined in a bankruptcy reorganization proceeding. Resolution of that dispute was not an integral component of the Harrison reorganization plan. Harrison's argument that the failure to raise the dispute in the reorganization proceeding

precludes its later resolution would leave these parties in a perpetual dispute unable to resolve the issue in this or any forum.

▇ Similarly, Harrison argues that the decision of the Puyallaup Tribal Court of Appeals in *Gold Eagle v. Hargrove,* 98–561 (1999) determined that the Deed of Trust recorded in Pierce County in 1994 had priority over the Emerald leases recorded in 1995. Harrison asks this court give full faith and credit to that determination. The issue before the Tribal Court of Appeals was whether the Tribal Court had jurisdiction of the dispute between Gold Eagle and Hargrove. The Tribal Court concluded it did and that in the absence of a tribal scheme, the lower Tribal Court should apply state foreclosure law. It did not address the issue of the validity of the later assignment from Gold Eagle to Harrison or the effect of the later foreclosure upon the interests of Emerald. Giving full faith and credit to the Tribal Court's decision simply does not resolve any of the current issues before this court.[2]

### ISSUE 5—EFFECT OF DEED OF TRUST FORECLOSURE ON RE-CORDED LEASE INTEREST

▇ Ordinarily, a non-judicial foreclosures pursuant to R.C.W. 61.24.050 extinguishes all junior liens on the same property. *In re Trustee's Sale of Real Property of Upton,* 102 Wash.App. 220, 224, 6 P.3d 1231 (2000). *Mann v.*

*Household Finance Corp. III,* 109 Wash. App. 387, 393, 35 P.3d 1186, 1188 (2001).

A trustee's sale has the effect of depriving "the grantor or his successor in interest and all those who hold by, through or under him of all of their interest in the property." [Former] RCW 6[1].24.030(6)(i) [1990].... Thus a nonjudicial foreclosure eliminates all subordinate liens and other interests in the property but has no effect on liens and other interests that are prior to the deed of trust.

IV WASH. STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 48.10(6)(b)(i), at 48–33 (3d ed.1996) as cited in *In re Mann, supra.*

▇ Having determined that Harrison's interest under the Deed of Trust was superior to the interest of Emerald, the foreclosure terminated and extinguished Emerald's junior interest in the real property.

### CONCLUSION

The motion of the debtor Emerald to assume the leases is **DENIED** as those leases were terminated and extinguished by the Harrison foreclosure action. Harrison's motion to lift stay to proceed in the Tribal Court is now moot as that action was ultimately removed to this court and is a pending adversary proceeding.

### CHRONOLOGY OF EVENTS

6/13/94  Deed of Trust Hargrove to BFC recorded with Pierce County
7/7/94  Puget Sound BIA approve Hargrove Deed of Trust
1/9/95  First Emerald lease from Hargrove
  1/12/95—BIA approved first lease

---

**2.** The Tribal Court did find that the Hargrove Deed of Trust was "duly entered by the BIA". It is undisputed that the Deed of Trust was approved by the BIA in 1994 when it was recorded with Pierce County and that it was recorded with the BIA in 1997. Those undisputed facts certainly support the Tribal Court's conclusion that the Deed of Trust was "duly entered" but the Tribal Court did not resolve the legal issues regarding the priority between the Deed of Trust and the leases.

| | |
|---|---|
| 6/1/95 | Second Emerald lease from Hargrove |
| | 6/13/95—BIA approved second lease |
| 1995 | Both leases recorded with BIA |
| 1/2/96 | BFC assignment to Soh and Gold Eagle |
| | 1/3/96—Assignment recorded Pierce Co. |
| | 3/3/97—Assignment approved by BIA |
| 5/97 | Hargrove DOT recorded with BIA Portland |
| 12/15/97 | Soh give 1/2 interest to Gold Eagle |
| | 3/3/98—BIA certificate of assignment |
| | 3/9/98—Assignment recorded with BIA |
| | 3/18/98—Assignment recorded with Pierce County |
| 3/98 | Gold Eagle starts non-judicial foreclosure against Hargrove |
| | 12/2/98—Hargrove in Tribal Court sues to stop foreclosure |
| | 9/14/99—Tribal Court allows foreclosure |
| 2/8/01 | Gold Eagle assigns Deed of Trust to Harrison, no BIA approval |
| | 2/8/01—Assignment recorded with Pierce County |
| 2/9/01 | Hargrove filed bankruptcy |
| 11/29/01 | Plan confirmed and Harrison allowed to foreclose |
| 5/31/02 | Deed of Trust foreclosure sale |
| 6/6/02 | Trustee Deed of Trust granted Harrison |
| | 6/7/02—Recorded with BIA and Pierce County |