**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: EMERALD OUTDOOR
ADVERTISING, LLC,
                    *Debtor,*

TIFFANY HARRISON, Creditor; GOLD
EAGLE GAMING LLC, Creditor,
                    *Appellants,*

v.

EMERALD OUTDOOR ADVERTISING,
LLC,
                    *Appellee.*

No. 04-35647

D.C. No.
CV-03-00432-RHW

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
March 8, 2006—Seattle, Washington

Filed April 13, 2006

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Silverman

## COUNSEL

John D. Sullivan; Short Cressman & Burgess PLLC, Seattle, Washington, for appellant Gold Eagle Gaming, LLC.

Jason M. Whalen; Alexander S. Kleinberg; Eisenhower & Carlson, PLLC, Tacoma, Washington, for appellant Tiffany J. Harrison.

Michael J. Murphy; William J. Crittenden; Groff Murphy Trachtenberg & Everard PLLC, Seattle, Washington, for appellee Emerald Outdoor Advertising, LLC.

## OPINION

SILVERMAN, Circuit Judge:

Peskind's law holds: When there is uncertainty about where to file a security interest in order to perfect it, file everywhere.[1] This case illustrates the wisdom of that rule. In 1994, a deed of trust securing Indian trust land was recorded in the Office of the Auditor of Pierce County, Washington, the county in which the land is located. In 1995, a commercial lease of the land was recorded in the BIA Title Plant in Portland, Oregon. Which interest has priority — the deed of trust or the lease?

---

[1]JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 23-22 (1st ed. 1972). Peskind's law is named after E.J. Peskind, a long-standing member of the Arizona Bar. Peskind was a student of Professor James J. White at the University of Michigan Law School in the 1960's. When Professor White called on Peskind and asked him what steps a party should take to perfect its security interest when there is uncertainty about where to file, Peskind responded, "File everywhere." Apparently moved by the wisdom of that answer, Professor White declared to the class that it would be forever known as "Peskind's law." The White & Summers hornbook defines Peskind's law as follows: "When in doubt about your perfection take all possible steps (including . . . multiple filing) that could help." *Id.* § 23-22, at 863.

We hold that federal law directs us to state law to determine priority, and under Washington's race-notice statute, priority is obtained by recording in the county in which the land is located. Therefore, the deed of trust has priority over the lease.

## I. BACKGROUND

### A. Factual Background

Roleen Hargrove, a member of the Puyallup Tribe of Indians, occupied a parcel of tribal land that was held in trust by the United States government. Under federal law, holders of Indian trust lands may mortgage their land, but they must first obtain BIA approval. *See* 25 U.S.C. § 483a(a). In 1994, Business Finance Corporation ("BFC") agreed to loan Hargrove money if she executed a deed of trust in its favor.

On July 7, 1994, the BIA Puget Sound Agency issued a "Certificate of Approval" in connection with the Hargrove-BFC deed of trust. The Certificate of Approval provides that it "shall be attached to and recorded in the Official Records of the Bureau of Indian Affairs with [the] Deed of Trust" and that it was granted in accordance with federal law and pursuant to the Secretary of the Interior's authority. However, the Certificate of Approval was not recorded in the BIA Title Plant in Portland at that time (it was not recorded there until three years later, in 1997). "Title Plant" is a term used to identify any one of the BIA's Land Titles and Records Offices located throughout the country. Each such Office has responsibility for Indian lands located within a particular geographic region.

BFC recorded the deed of trust with the Pierce County Auditor in September 1994. On January 9, 1995, Hargrove and Emerald Outdoor Advertising, LLC executed a lease whereby Emerald Outdoor was permitted to erect advertising

signs on Hargrove's land. Emerald Outdoor recorded its lease in the Portland BIA Title Plant, but not in Pierce County.

In January 1996, BFC assigned its deed of trust to Gold Eagle Gaming.[2] In March 1997, after discovering that the deed of trust was recorded only in Pierce County, Gold Eagle's counsel asked the BIA to record the deed of trust in the Portland BIA Title Plant, which it did in May 1997.

In March 1998, after Hargrove defaulted on her loan, Gold Eagle commenced a non-judicial foreclosure of the deed of trust. In August 1998, an official at the Portland BIA Title Plant informed Gold Eagle's counsel that the deed of trust was void for lack of approval because "the Puget Sound Agency did not properly process the Deed of Trust when it was approved in 1994."[3] Apparently, the Puget Sound Agency failed to record the Certificate of Approval in the Title Plant. In September 1997, the Puget Sound Agency sought to correct the purported defect, recording a new certification "as a Trailer Document to the original Deed of Trust," and declared that the "Deed of Trust is entirely valid." The new certification, dated September 10, 1998, specifically references the original "Certificate of Approval" signed by the Puget Sound Agency on July 7, 1994.

In February 2001, before the foreclosure sale occurred, Gold Eagle assigned its interest to Tiffany Harrison, a member of the Puyallup Tribe. The next day, Hargrove filed for bankruptcy, and the bankruptcy court permitted the deed of

---

[2]The assignment provided that Gold Eagle and John Soh each held a 50 percent interest in the deed of trust. Soh later transferred his interest to Gold Eagle. So, Soh is not involved in this dispute.

[3]The account of what happened is set forth in a letter from Gold Eagle's counsel to Mr. William Black, Superintendent of the Puget Sound Agency. In their Stipulated Facts, dated July 17, 2003, the parties referenced the existence of that letter, but did not agree to the accuracy of its contents. Nonetheless, we do not rely on the letter for its truthfulness, but only to explain why the BIA issued a new certification, as explained *infra*.

trust to be foreclosed in May 2002. Harrison was the successful bidder.

In August 2002, Harrison filed an eviction action against Emerald Outdoor in tribal court. That action was dismissed without prejudice. In December 2002, Harrison tried again, this time filing a quiet title action against Emerald Outdoor in tribal court. While that action was pending, Emerald Outdoor filed for bankruptcy, which stayed the tribal court proceedings.

## B.   Bankruptcy Proceedings

In the bankruptcy court, Emerald Outdoor filed a Motion to Assume Executory Contracts and Leases under 11 U.S.C. § 365,[4] seeking to establish the validity of its lease of Harrison's land. The bankruptcy court determined that Emerald Outdoor's lease was extinguished upon foreclosure of the deed of trust, because its interest was junior to the interest conveyed in the deed of trust (which was ultimately assigned to Gold Eagle, and then to Harrison). *See In re Emerald Outdoor Adver., L.L.C.*, 300 B.R. 775 (E.D. Wash. 2003). A prerequisite to that ruling was the bankruptcy court's conclusion that recording the deed of trust in Pierce County gave it priority over Emerald Outdoor's lease, even though the deed of trust was not recorded in the Portland BIA Title Plant until after the lease was recorded there. *See id.* at 783. The bankruptcy court also concluded that the deed of trust was valid when the Puget Sound Agency issued the "Certificate of Approval" on July 7, 1994, *not* in September 1998 when the BIA recorded a new certification as a trailer to the deed of trust. *See id.* at 780-81.

On appeal, the district court agreed with the bankruptcy

---

[4]11 U.S.C. § 365(a) provides that, with certain limited exceptions not at issue, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

court that the approval process did not depend on recording the deed of trust in the Portland BIA Title Plant, thus rendering July 7, 1994, the effective date of BIA approval.[5] The district court, however, concluded that Emerald Outdoor's lease had priority over the deed of trust because the lease was recorded in the BIA Title Plant before the deed of trust was. Gold Eagle and Harrison timely appealed.

## II.  ANALYSIS

### A.  Pierce County was the proper recording location in this case.

[1] Our analysis focuses on 25 U.S.C. § 483a(a). To protect mortgagees that loan money to holders of Indian trust lands, § 483a(a) subjects the holder to foreclosure "in accordance with the laws of the tribe which has jurisdiction over such land or, in the case where no tribal foreclosure law exists, in accordance with the laws of the State . . . in which the land is located." The Puyallup Tribe had no laws governing the foreclosure of mortgaged land and thus, Washington law governed the foreclosure of Hargrove's land. The question before us is whether § 483a(a)'s direction to follow state law necessarily incorporates Washington's rules for determining priority.

Emerald Outdoor asserts that, notwithstanding § 483a(a)'s direction to follow state law, BIA regulations dictate *where* a party must record an interest in Indian land to obtain priority over competing interests, namely, in the BIA Title Plant, and that recording there was necessary to perfect the deed of trust. Appellants, on the other hand, assert that state law dictated the proper location of recording in this case, namely, in the County Auditor's Office in Pierce County, and that such recording was all that was necessary for perfection.

---

[5]The district court set forth its ruling in an unpublished order.

**[2]** We hold that BFC perfected its lien vis-a-vis subsequent interest holders such as Emerald Outdoor when it recorded in Pierce County, in accordance with state law, regardless of whether it also recorded in the BIA Title Plant. That is because § 483a(a)'s resort to Washington foreclosure law necessarily incorporates Washington rules for recording, lien perfection, and priority.

The act of recording has no legal significance besides providing notice to interested parties of an interest in land. As the bankruptcy court correctly noted, whether the notice achieved by recording establishes *priority* over another interest depends on how priority is determined under the applicable substantive law. To put it another way, priority "is not solely dependent upon the earliest date of notice but may depend upon the type of transaction." 300 B.R. at 782. For example, as the bankruptcy court explained, RCW 60.04.061 establishes priority among mechanics liens by the date which materials were first supplied (or labor provided), not solely by the date of notice of the lien.

**[3]** This case involves the foreclosure of a mortgage on land. Priority among the various interests in the land is a critical part of a foreclosure in Washington. *See* RCW 61.24.060 (foreclosure extinguishes all liens, leases and other encumbrances that are subordinate to the foreclosed deed of trust). As to whose interests are junior, we look to state law — not federal law — because § 483a(a) and its accompanying regulations say nothing about priority of interests.

**[4]** Washington law provides that any conveyance of an interest in land that is not recorded *in the county in which the land sits* is void as against any subsequent interest that is duly recorded, provided the holder of the subsequent interest paid consideration and had no notice of the prior interest. *See* RCW 65.08.070. Indeed, to even conduct a foreclosure sale in Washington, the deed of trust must be recorded "in each county in which the land or some part thereof is situated."

RCW 61.24.030. Emerald Outdoor does not contend that Appellants failed to comply with those laws. Accordingly, the foreclosure sale extinguished its lease.

The bankruptcy court suggested that recording in *either* the BIA Title Plant or Pierce County would have perfected BFC's interest. *See* 300 B.R. at 782. As we just explained, though, Washington law requires a party to record in the county in which the land sits in order to perfect an interest. *See* RCW 65.08.070. Thus, for the bankruptcy court to be correct, we would have to conclude that the BIA recording system preempted Washington's recording statute (RCW 65.08.070) to the extent that the statute applies to foreclosures of Indian trust lands under § 483a(a). We will not do that. Not only is there no evidence of Congressional intent to preempt state law,[6] there is actually clear direction from Congress that we are supposed to *accommodate* state or tribal law. *See Northwest S.D. Prod. Credit Ass'n v. Smith*, 784 F.2d 323, 326 (8th Cir. 1986) ("Rather than evincing an intention to create a body of federal law applicable to mortgages on Indian trust lands, the statute's language and legislative history demonstrate that Congress intended to . . . accommodate local law to trust land mortgages." (citation omitted)).[7]

Emerald Outdoor argues, and the district court agreed, that

---

[6]Federal preemption of state law occurs only where Congress expressly provides for it, Congress establishes a scheme of regulation so comprehensive as to leave no room for supplementary state regulation, or compliance with both federal and state law is impossible. *See In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045 (9th Cir. 2001).

[7]After Emerald Outdoor's motion to assume its lease was denied, it moved for reconsideration, submitting a declaration from Terry Beckwith, a former local director at the BIA. It was not an abuse of discretion for the bankruptcy court to deny that motion. *See In re Weiner*, 161 F.3d 1216, 1217 (9th Cir. 1998) (bankruptcy court's denial of motion for reconsideration is reviewed for abuse of discretion). Beckwith's declaration was nothing more than his personal opinion about how the recording process should work, and it came far too late.

giving effect to BFC's recording in Pierce County renders the BIA recording system moot. We agree that the BIA regulations make recording in the Title Plant mandatory, and that Congress would not authorize, nor would the BIA implement, a recording system in an exercise of futility. Nonetheless, as explained below, that does not mean recording in the BIA Title Plant gave Emerald Outdoor's lease priority over Appellants' interest.

Pursuant to 25 U.S.C. § 5,[8] the BIA has promulgated regulations that establish a comprehensive scheme for recording title documents relating to Indian lands. For instance, 25 C.F.R. § 150.1 states that the BIA is to "set forth authorities, policy and procedures governing the recording, custody, maintenance, use and certification of title documents, and the issuance of title status reports for Indian land." Section 150.6 mandates that "[a]ll title documents shall be submitted to the appropriate Land Titles and Records Office for recording immediately after final approval, issuance, or acceptance." 25 C.F.R. § 150.6.

**[5]** Significantly, BIA Title Plants (i.e., the Land Titles and Records Offices) are "charged with the *Federal* responsibility to record, provide custody, and maintain records that affect titles to Indian lands." 25 C.F.R. § 150.2(j) (emphasis added). We agree with Appellants that the word "Federal" must have some significance. *See United States v. Trident Seafoods Corp.*, 92 F.3d 855, 860 (9th Cir. 1996) (court must interpret statute and rule of civil procedure "in a manner that gives meaning to every word in each").

**[6]** The term "Federal" in § 150.2(j) suggests that the BIA anticipated that, in addition to a recording in the appropriate

---

[8]25 U.S.C. § 5 provides that the Commissioner of Indian Affairs is "empowered and directed to continue to make and keep a record of every deed executed by any Indian . . . which may require the approval of the . . . Secretary of the Interior, whenever such approval shall have been given."

Title Plant, parties to a conveyance of Indian land may be obligated to comply with parallel *state* recording systems, or, in some instances, the systems that the *Tribes* themselves maintain.[9] That does not mean, however, that recording in the Title Plant serves no purpose. While it may not determine priority between competing interests in Indian land, recording in the BIA Title Plant allows the BIA to exercise its fiduciary obligations to maintain accurate records of the status of title to Indian land. *See McDonald v. Means*, 309 F.3d 530, 538 (9th Cir. 2002) (BIA has fiduciary obligations in its management of tribal rights-of-way held in trust by government); *cf. Inter Tribal Council of Ariz., Inc. v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995) (Government incurs fiduciary duties toward Indian tribes when it manages or operates Indian lands).

**[7]** In fact, a close reading of the BIA's regulations reveals that the recording obligation in 25 C.F.R. § 150.6 is an *internal* obligation that falls on the shoulders of the BIA, not the party acquiring an interest in Indian land. Title documents are recorded "immediately after final approval," and it is the approving officials who are responsible "for prompt compliance with the recording requirement." 25 C.F.R. § 150.6 ("Bureau officials delegated authority by the Secretary to approve title documents or accept title are responsible for prompt compliance with the recording requirement."). This process meshes well with § 483a(a). The statute ensures that the BIA will receive the title documents by virtue of its approval requirement, and if the BIA approves the conveyance, *it* then records *in its system*. Because recording cannot occur until there is approval, we can discern no reason for the BIA to approve a conveyance and then turn around and send the title documents back to the parties, only to have them resubmit the same documents for recording in the local Title Plant.

---

[9]*See* Appellants' Opening Br. at 33-37 (listing Tribes which have adopted their own recording systems).

Title Plants can serve other purposes as well. In some instances, recording in Title Plants could determine priority among competing interests in Indian land. For instance, tribal law may require it, or the BIA could assume recording obligations under a contract between the tribe and Government. *See Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. United States*, 21 Cl. Ct. 176, 182 (1990) (memorandum of understanding provided that the BIA "shall assume principal responsibility for the maintenance of records of all land held in trust by the United States for the Tribe").

**[8]** Moreover, as Emerald Outdoor points out, Title Plants provide "constructive notice" of title to Indian land. *See* 25 C.F.R. § 150.2(m). Such notice, according to Emerald Outdoor, makes little sense if it has no impact on priority between competing interests in Indian land. The BIA, in accordance with the authority granted it under 25 U.S.C. § 5, can certainly decree that a recording in the appropriate Title Plant serves as notice to the world of an interest in Indian land. *See, e.g.*, *Ellingsen v. Franklin County*, 810 P.2d 910, 912 (Wash. 1991) ("The matter of constructive notice from the record is entirely a creation of statute . . . ." (internal quotations omitted)). That does not mean, however, that Emerald Outdoor's lease has priority *in this case*. The fact that Emerald Outdoor's recording in the Title Plant constituted constructive notice does not impact a priority contest under Washington law — the contest is won by recording in the county in which the land sits. As we said before, there are no federal priority rules that govern this case.

As to the legal significance of the "constructive notice" element in the BIA regulations, our inquiry ends there. There may be instances where recording in the BIA Title Plant could establish priority, but we leave that issue for another day.[10]

---

[10]For instance, if Washington were a "pure notice" state instead of a "race-notice" state — meaning that the law did not protect subsequent purchasers with notice, *even if* they recorded first — *and* BFC recorded in the

## B. The BIA's approval of the deed of trust was effective July 7, 1994.

**[9]** The fact that the Certificate of Approval was not recorded until 1998 did not delay its effective date and make BFC's deed of trust junior to Emerald Outdoor's lease. As the district court noted, the BIA may seek criminal penalties if a person attempts to record conveyance documents *before* BIA approval. *See* 25 C.F.R. § 152.22(a) ("[I]nducing an Indian to execute an instrument purporting to convey any trust land or interest therein, or the offering of any such instrument for record, is prohibited and criminal penalties may be incurred."). Consequently, recording must occur *after* BIA approval. We agree with the district court that if recording has any legal significance, it "must have legal significance distinct from the act of approval."

The BIA regulations confirm this. In particular, they provide that "[a]ll title documents shall be submitted to the appropriate Land Titles and Records Office for recording immediately *after* final approval." 25 C.F.R. § 150.6 (emphasis added). Nothing in the BIA regulations conditions validity of the conveyance upon recording of the title documents. That comports with the significance of the two procedures — BIA approval requires an exercise of discretion, whereas recording "is a ministerial act." 300 B.R. at 781. Indeed, the Supreme Court recognized as much when it held that an interest in Indian land that was duly recorded — but *not* approved by the Government as required by law — had priority over an inter-

Title Plant, while Emerald Outdoor recorded in Pierce County, the deed of trust could still have priority via the "constructive notice" provision in § 150.2(m). That is because in a "pure notice" state, the technicalities of recording requirements, including the proper location, are subservient to the question of whether the party had notice. We do not, however, offer any opinion as to how such a case would come out.

est subsequently recorded *and* approved by the Government. *See Lomax v. Pickering*, 173 U.S. 26, 29 (1899).[11]

Emerald Outdoor argues that whether the BIA approved the deed of trust in 1994 is a factual dispute, and the bankruptcy court erred by deciding the issue without allowing it discovery or an evidentiary hearing. We disagree. The issue is whether "approval" for purposes of § 483a(a) requires recording in the BIA Title Plant, something that did not occur when the Puget Sound Agency issued the "Certificate of Approval" in July 1994. This is purely a question of law that did not require an evidentiary hearing. Indeed, we note that the record in this case included all the relevant title documents, and neither party claims otherwise. Our task, as well as the bankruptcy court's, was to determine the legal significance of those documents. There was no error.

## III.

**[10]** It was risky for BFC not to record in the BIA Title Plant. BFC violated Peskind's law but not state or federal law. Recording in Pierce County was enough to establish priority over Emerald Outdoor's lease. Section 483a(a) incorporates state law, and state law is what BFC followed. The order of the district court is **REVERSED**.

---

[11]Specifically, the Court said:

There was nothing to apprise the recorder of any want of authority to convey, or to justify him in refusing to put the deed on record. Whether the grantors had authority to make the deed, as between themselves and the grantees, or subsequent purchasers, is a matter which did not concern him. Though the deed might be impeached by showing that the grantors had no such authority, the record was notice to subsequent purchasers that they had at least attempted to convey their interests.

*Id.*